MICHAEL FLACKLER v. ANTON NOVAK, *et al.*, Appellants.

**Malicious Prosecution:** PROBABLE CAUSE: PRACTICE. Plaintiff sues on account of having been maliciously prosecuted for trespass on land. He was once defeated in an equity suit between him and the defendants in the malicious prosecution suit. In that suit he sought to recover said land by the same facts now used to show that he was not a trespasser. *Held*, the pleadings and decree in the equity suit are admissible to show probable cause, and this though he avers an intention to appeal from said decree.

SAME. The finding of an indictment that plaintiff was held to answer, and waiving examination are not *conclusive* evidence of probable cause.

SAME. Probable cause should not be defined as that which justifies a *cautious* man in believing in guilt. There are degrees of caution.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

TUESDAY, MAY 21, 1895.

Action at law to recover damages alleged to have been caused by malicious prosecution of criminal proceedings instituted by the defendants. There was a trial by jury, and a verdict and judgment in favor of the plaintiff, and against the defendants Anton Novak and Jacob Pauba. From that judgment the defendants named appeal.—*Reversed*.

*Heines & Heines* and *Rickel & Crocker* for appellants.

*Charles W. Kepler* for appellee.

Robinson, J.—There is much conflict in the evidence, but the plaintiff claims, and there is evidence which tends to show, that the transactions out of which

this action has grown were as follows: In March, 1892, the plaintiff and the defendant Anton Novak entered into a verbal agreement by which the latter was to purchase of the defendant Jacob Pauba three tracts of land, which contained in the aggregate about ninety-six acres, situated in Linn county, of which the plaintiff was to have the east half. An agreement for the purchase of the land was made by Novak with Pauba. The plaintiff paid to Novak one dollar of the five which were paid to Pauba at the time, and took possession of the part of the premises he was to have; Novak helping him to move onto them, and also helping to fix the boundary line which was to separate the two parts. Although the agreement for the sale of the land was made with Pauba, the title thereto was vested in his wife. A deed for the land was made by Pauba and his wife to Novak, but for some reason they concluded to abandon the agreement, and the land was conveyed by Novak to Pauba, and it is claimed that Novak accepted a lease for it. The plaintiff continued in possession of the part he was to have, and obtained and offered to pay to Novak the money necessary to complete their first payment. Novak refused to accept the money. Meanwhile the plaintiff had been notified to leave the premises, but had refused to do so. Pauba and Novak attempted to take possession of a part of the land, and erected wire fences on it. These were cut and destroyed by the plaintiff. In June, 1892, he was arrested on an information signed and sworn to by Pauba, which accused him of the crime of maliciously injuring and breaking down the fences; and, upon being brought before the justice of the peace who had issued the warrant, he waived examination, and was held to answer the charge, and gave bail therefor in the sum of two hundred dollars. Pauba and others appeared, and testified before the grand jury, and an

indictment was returned by it for the offense charged in the information. The proceedings on the indictment were afterward dismissed by the state for want of evidence to convict. After the plaintiff had been held to answer to the information filed by Pauba, Novak filed in justice's court a complaint in which the plaintiff was charged with threatening to commit a public offense, in that he had threatened to continue to cut and destroy the fences in question. A warrant was issued on the information for the arrest of the plaintiff. He was again arrested, and taken before the justice. An examination was had, and the plaintiff was required to enter into an undertaking to abide the order of the district court at the next term thereof, and in the meantime to keep the peace. The undertaking was given as required, and the plaintiff appeared at the next term of the district court, but upon a hearing by the court was discharged. The defendants are Anton Novak, Mary Novak, and Jacob Pauba. The plaintiff claims that they conspired together to prosecute him criminally for the purpose of compelling him to abandon his right to and possession of the land he had purchased of Novak, and that the prosecutions stated were commenced and carried on maliciously, and without probable cause, for the purpose stated. The court directed a verdict for the defendant Mary Novak, and she is not concerned in this appeal. The jury returned a verdict for the plaintiff, and against the defendants Anton Novak and Pauba, for the sum of four hundred and twenty-five dollars, and judgment for that amount was rendered against them.

I.   The answers of the defendants contain general denials. In addition, Anton Novak and Pauba allege

that in all they did in the prosecution of the plaintiff they acted in good faith, without malice, according to the advice of attorneys previously given on a full and fair statement of facts. They deny collusion, and rely, as matters of defense, upon the waiving of examination by the defendant in the justice's court, and the indictment by the grand jury, in one case, and the requirement that he enter into an obligation to abide the order of the district court and to keep the peace, in the other. In an amendment to their answers filed in October, 1893, the defendants allege that since the commencement of this cause, in an action in equity commenced by the plaintiff against the defendants in the same court, it had been determined and decreed that the plaintiff never at any time had any right, title, or interest in or to the premises which he claims to have purchased as stated, and that he never had any right, title, or interest in the property injured by him. It is further alleged that the court had full jurisdiction of the parties and of the subject-matter of the action when the decree was rendered, and that all these matters are fully shown by the records of the court. This amendment to the answers was not in any manner assailed. On the trial of this cause the defendants offered in evidence the pleadings and decree in that case. They showed that an action in equity had been commenced as alleged; that the plaintiff had claimed therein to be the owner of the land; that he relied upon the same facts to establish his alleged right that he relied upon in the criminal cases to justify his acts in cutting and destroying the fences and in threatening to continue to do so; and that, on the hearing, his petition was dismissed; and that Dora Pauba was adjudged to be entitled to the possession of the land, and that it should be delivered to her. The plaintiff objected to this evidence, on the ground that

it was irrelevant, immaterial, and incompetent; that it did not show that the issues in this case were determined; and that it did not appear that the adjudication was final "for the reason that the time for appeal has not elapsed, and the defendant claims that he intends to appeal from said judgment." It is probable that the plaintiff, and not the defendants, was intended to be referred to in the last objection. The objections thus made were sustained, and of that ruling the appellants complain.

We are of the opinion that it was erroneous. Had the record in the equity case been introduced, it would have tended to show that the plaintiff had no right to destroy the fences in question, and that the defendants had probable cause to prosecute him for what he did and threatened. No appeal had been taken from the decree, and it was in force. The plaintiff could not have suspended its effect without taking an appeal therefrom, and a mere statement of his intention to appeal, without more, was not a sufficient ground upon which to reject the evidence offered. It may be that the plaintiff is entitled to recover notwithstanding the decree in the action in equity. That action did not involve all the issues presented in this, but it determined some of them, and, so long as the decree is in force, it is binding upon all the parties to it. See *Johnson v. Miller*, 63 Iowa, 540. Although the decree was brief, reciting but little more than a dismissal of the petition of the plaintiff, it was an adjudication against him of the issues presented by the pleadings, and among those were his alleged purchase of the land, and right to occupy it and to treat it as his own.

II. The appellants complain of the refusal of the court to give the eighth, ninth, and fourteenth instruc-

tions asked by them. The eighth was to the effect that the finding of the indictment by the grand jury showed probable cause for the institution of the proceedings for the crime of malicious mischief. The ninth was to the effect that the fact that the justice required of the plaintiff an undertaking to keep the peace established probable cause for the proceeding for that purpose, unless the plaintiff had shown that the decision of the justice was procured by fraud or perjury. The fourteenth was to the effect that the defendants had probable cause for instituting the proceedings, unless the plaintiff has shown that the action of the grand jury and the justice was procured or caused by fraud or false or perjured testimony. We do not think the court erred in refusing the instructions asked. The action of the justice and of the grand jury undoubtedly tended to show probable cause, but would not be conclusive proof of it. If the defendants knew that the real facts did not authorize the action taken, there was no probable cause for the prosecutions. The instructions come within the doctrine announced in *Barber v. Scott*, 92 Iowa, 52 (a case decided since the trial of this case in the district court), and we need not consider them further.

III. The court charged the jury as follows: "Probable cause is defined to be a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." The appellants claim that this requires a higher degree of care than should be imposed upon one who institutes criminal prosecutions, or that the degree of care it requires is at least uncertain. There are degrees of caution. All of several persons engaged in a transaction might act with caution, and yet some might be

much more cautious than others. It is not certain what the jury would understand by the term "cautious man." In *Donnelly v. Burkett*, 75 Iowa, 616, it was held that the defendants in that case had probable cause if they honestly thought the person accused guilty; and their belief was based upon a knowledge of facts and circumstances tending to show guilt, "which were sufficient to induce an ordinarily reasonable and cautious man" to believe him guilty. In *Walker v. Camp*, 63 Iowa, 630, it was held, in effect, that a criminal prosecution would not be justified unless the person commencing it had "used the means which an ordinarily reasonable and prudent man would exercise" to learn the facts. In 14 Am. & Eng. Enc. Law, 24, "probable cause" is defined to be "the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." The definition is supported by numerous authorities cited in a note. We conclude that the paragraph of the charge under consideration was objectionable in failing to indicate the degree of caution which was required of the defendants to ascertain the guilt of the plaintiff. The caution required must be reasonable in view of the facts and circumstances of the case.

IV. Numerous other questions are presented for our consideration. Some of them are merely stated without argument; others are determined by what we have already said; and others are not likely to arise on another trial. Because of the errors pointed out, the judgment of the district court is *reversed*.