ELMER EVERSOLL v. F. C. MOSHER.[1]

June 30, 1922.

No. 22,914.

**When advice of counsel is valid defense to action for malicious prosecution.**
    1. Advice of counsel is not a valid defense to an action for malicious prosecution unless it be made to appear that a full and fair statement of the facts was made to the attorney and acted upon by him.

**Question for jury.**
    2. Whether such a full and fair statement was made to the attorney in this case was on the evidence an issue of fact for the jury.

**Unmatured cause of action not included in settlement.**
    3. A settlement of all "civil differences" *held* not necessarily to include a cause of action for malicious prosecution not yet matured,

[1]Reported in 189 N. W. 127.

and that if included in fact a definite showing to that effect should be made.

**Verdict for plaintiff sustained.**
    4.  The evidence sustains the verdict, and the record presents no reversible error.

Action in the district court for Dodge county to recover $20,000 for malicious prosecution. The case was tried before Childress, J., who, when plaintiff rested and at the close of the testimony denied plaintiff's motions to dismiss the action and at the close of the testimony defendant's motions for a directed verdict on the grounds that plaintiff had failed to show any malice, either express or implied, and that defendant's conduct had been justified by reason of the fact he was acting under the advice of competent counsel, and a jury which returned a verdict for $2,000. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*C. D. Simpson* and *J. J. McCaughey*, for appellant.

*James P. McMahon* and *H. J. Edison*, for respondent.

BROWN, C. J.

Action for malicious prosecution in which plaintiff had a verdict and defendant appealed from an order denying his alternative motion for judgment or a new trial.

In September, 1920, defendant swore out a warrant against plaintiff thereby charging him with the larceny of a team of horses alleged to have been the property of defendant. Plaintiff was arrested on the warrant and by the magistrate after hearing held to await the action of the grand jury. He was subsequently formally indicted on the charge and after due trial was found not guilty. He thereafter brought this action charging in the complaint that the prosecution was without probable cause and with malice. The defense to the action was that defendant in all matters in respect to the prosecution against plaintiff acted in good faith and in reliance upon the advice of the county attorney, after a full and fair statement by defendant of the facts in relation to the matter; that there

was probable cause for the prosecution, and that defendant was not actuated by malice or ill-will toward plaintiff; and, further, that plaintiff's right of action, if any ever existed, was settled and adjusted by the parties prior to the commencement of the action.

The verdict for plaintiff disposed of the issue of advice of counsel, probable cause and malice adversely to defendant; the issue as to the alleged settlement was not submitted to the jury, the court having excluded the evidence tendered by defendant to prove it.

The assignments of error present the questions: (1) Whether the evidence supports the verdict upon the issues submitted to the jury; and (2) whether there was error in excluding the evidence offered by defendant in support of the defense of settlement. We answer the first in the affirmative and the second in the negative.

It appears that for three years prior to this controversy plaintiff was a tenant operating one of defendant's farms in Dodge county; the terms of the tenancy entitled plaintiff to one-half the farm products. Plaintiff apparently tired of his farming efforts, on September 28, 1920, and without notice or word to defendant, took a team of horses, with a load of household goods belonging to him, and with the members of his family departed for his old home in the state of Illinois; his departure was in the night time and he reached his destination in due season.

Upon learning of the situation a day or two later defendant conferred with his attorney, also the county attorney, and upon their advice swore out a warrant for the arrest and apprehension of plaintiff charging him with the larceny of the team of horses. Plaintiff was later arrested on the warrant and voluntarily returned with the officer to this state to answer to the charge thus made against him; the horses were shipped back to defendant and he has since retained them. On being brought to the justice of the peace who issued the warrant the evidence tends to show that plaintiff acknowledged his guilt and so pleaded. He was not aided or advised by counsel, and upon such plea the justice held him for action by the grand jury, and for want of bail was committed to jail. The following day he was taken before the judge of the district court of the county upon an

informal application, prepared by the county attorney, at his request it is claimed, for permission to plead guilty to the charge made against him. The judge very properly declined to act in the matter until plaintiff had the benefit of counsel, and an attorney was appointed to act in that behalf. In a conference with his attorney plaintiff asserted that he was the owner of the horses, that he had bought them from defendant some three years before. But he had no bill of sale or other written evidence of title, and his counsel was in doubt. But plaintiff was anxious to get out of his trouble as soon as possible and was willing to plead guilty if a light sentence would be given by the court. The attorney so reported, but the court declined to agree to a light sentence; whereupon plaintiff, through his attorney, refused to enter a plea of guilty and he was remanded to jail.

What took place before the district court is best explained by the testimony of the attorney appointed by the court to take charge of the interests of plaintiff. He testified in part as follows: "This is the conversation I had with him when I was called in to look up his rights. He told me that he had bought the team, as I say, and paid the price of $350.00, and that he had concluded that there was nothing for him to remain and stay for on the farm any longer and that he thought he would go back to where his wife's people and where his people lived and he took the team and went down there. I asked him if he drove clear through with the team and he said he did— his wife and children and himself with the wagon and this team. I then inquired, of course, as to whether he gave a note for these horses. He said he had not, that he bought them with the understanding that he was to pay for them as fast as he could. I said: 'Did you ever pay for them?' He said he did. He said he paid for them with the sale of his flax. And I asked him if he ever—if they were assessed to him and he said they were, that the assessor had assessed those horses to him and that he had paid the personal property taxes on the horses. And it occurred to me from that conversation as his counsel that if he had bought the team of horses of Mr. Mosher and had paid for them with the flax and they had been assessed to him and he had paid the personal property taxes on the

horses, that he ought not to plead guilty; in fact, he was the owner of the horses and the criminal action would not lie against him, and I advised him to withdraw his plea of guilty to not guilty and we would try the case before a jury at the next term of the district court at Dodge county, which he did."

At the same time the attorney, in his efforts to secure some concessions in favor of plaintiff had a conversation with defendant, in reference to which the attorney testified in part as follows:

"I told Mr. Mosher that I had been talking during the noon hour with Mr. Eversoll. I said: 'Mr. Mosher, if what Mr. Eversoll tells me is true this team belongs to him, that he bought them of you, and if he bought this team of you why I don't see why you should prosecute him.' 'Well,' he says, 'he didn't buy them of me.' 'Well,' I says, 'he said he did, and he tells me he also has been assessed and paid the personal property taxes on that team of horses and that you have never disputed his ownership of the horses.' 'Well,' he says, 'I own them horses and that is all there is about it.' 'But,' he says, 'what is the use of going into this? He has plead guilty before the justice of the peace and he also signed the papers with the county attorney to plead guilty before Judge Childress, and, he said, 'you are going to ball this thing all up if you advise him to withdraw the plea,' he says. 'Another thing, what can he do about it? He can't get a bond. He hasn't a thing. We got the horses down in Illinois and we brought him and the horses back and there is nothing for him to do and no lawyer can do him any good.' I said: 'Now, Mr. Mosher, I am going to defend that man and get him a bond if it is possible and he is not going to plead guilty.'"

Whatever statements the attorney made to the court on the subject of the guilt of plaintiff were in the hope that the matter could be adjused by a short sentence. But when his efforts in that direction failed he advised the court that a plea of not guilty would be interposed and plaintiff would stand trial. Notwithstanding the situation and the claim of ownership of the horses thus presented, the prosecution was continued against plaintiff, and in February, 1922, some four months later, he was indicted by the grand jury on

the evidence of defendant and others, and in May following after due trial was acquitted by verdict of the jury. This action followed.

1. The question of probable cause, and the question whether defendant instituted the prosecution against plaintiff in reliance upon the advice of counsel after a full and fair statement of the facts, were made by the evidence issues for the jury, and a careful consideration of the record brings to light sufficient competent evidence to justify the jury in finding both of them in plaintiff's favor. The foundation of the prosecution was that plaintiff had stolen the horses, and, if plaintiff's claim of ownership of the team be true, a question for the jury, there was no cause for the arrest, probable or otherwise, and defendant fails upon that issue.

Plaintiff claimed to own the horses, that he purchased them of defendant three years prior to the transaction and at about the time defendant acquired them from the prior owner. Plaintiff's testimony upon the point is clear and specific, and finds ample support in the testimony given by other witnesses. The horses were delivered to him at the time they were received by defendant from the prior owner, and he thereafter continued in the possession thereof until arrested as heretofore stated. They were taxed in his name, and for the three prior years he paid the taxes assessed against them. Of this there is no dispute on the record. Defendant, however, directly denied a sale to plaintiff, that he at that time parted with his ownership, and further testified that he knew nothing about the fact that the horses were taxed in the name of plaintiff, or that plaintiff had for the three years stated paid the same. On this state of the evidence the issue of ownership was for the jury. They resolved it in favor of plaintiff, which is in harmony with the same conclusion necessarily reached by the jury in the criminal prosecution. And although the evidence indicates quite clearly that plaintiff was anxious to and did in fact acknowledge his guilt before the justice of the peace, upon which he was held to the grand jury, it also appears that he was without the aid or advice of counsel, and whether he fully understood and appreciated the situation and the consequences to follow from the plea may well enough be doubted. He was in some mental distress because of the condition of his wife

and children and anxious to have his troubles over. And, in the face of this plea of guilty, given under the circumstances stated, the jury and trial court have acquitted him of criminal conduct; a conclusion we find from the record no sufficient reason for disturbing.

2. Neither can we disturb the verdict upon the issue of advice of counsel. While advice of counsel is a complete defense in such actions, when given after a full and fair statement of the facts involved, it affirmatively appears in this case, that is, from the verdict exonerating plaintiff from the charge of larceny, that defendant did not give to his attorney all the facts. There is no evidence that he advised the attorney of plaintiff's claim of ownership of the horses. If plaintiff was the owner, he became such by the purchase from defendant, a fact within the knowledge of defendant which he did not communicate to his attorney. The verdict disposing of the question adversely to him is sustained by the evidence, from which the conclusion necessarily follows that defendant's denial of a sale of the horses to plaintiff does not express the fact.

3. At the time plaintiff quit the farm and started for Illinois he left thereon a considerable quantity of personal property in and to which he had a one-half interest; the other interest belonging to defendant, the landlord. This property consisted of live stock, some 15 head, farm machinery and corn in shock in the field. All this defendant caused to be attached in a suit against plaintiff brought soon after his arrest to recover something around $700, which he claimed plaintiff owed him. That action was subsequently settled on some date in October, 1921, long prior to the indictment against plaintiff, which was found and returned in February, 1922. It is claimed that the settlement included any right of action against defendant for malicious prosecution, and that the court below erred in excluding evidence offered to establish that fact. We find no error in this ruling; the offer of evidence was insufficient, and did not suggest to the court a settlement of the scope now claimed.

The question put the witness to bring out the alleged settlements was whether at the time thereof anything was said about settling all "civil differences;" and that was the tenor and limit of a subsequent offer of evidence. Plaintiff had no right of action for mali-

cious prosecution against defendant at the time of the settlement; at least no action could have been maintained at that time. Plaintiff had not yet been indicted and his right to sue did not accrue until May following when he was acquitted of the charge. And, although a valid settlement of an anticipated lawsuit, founded upon a cause not yet matured, may undoubtedly be made, the offer of evidence to substantiate the claim in this case falls far short in evidentiary force. The record furnishes no suggestion that the parties discussed in the settlement, or in any way considered, a possible or probable claim of damages for malicious prosecution; and for aught that appears the matter was not in the mind of either party. The settlement of all "civil differences" is not broad enough to include an immatured claim of this kind. Plaintiff was then in jail and was represented in the settlement by his counsel, and no authority in him to include such a claim in the settlement of the attachment suit is suggested or shown.

The evidence supports the verdict, there are no errors, and the order appealed from is therefore in all things affirmed.

HALLAM, J. (dissenting.)

I cannot assent to the mulcting of defendant in damages for malicious prosecution.

Clearly, it seems to me, he acted upon probable cause. When plaintiff was arraigned before the justice of the peace the complaint was read to him and the justice asked him whether he was guilty or not guilty. He asked if he might consult the county attorney. Permission was given. He and the county attorney retired together and, after conference, plaintiff pleaded guilty. Plaintiff testified that the county attorney told him that was the best thing for him to do, and, after hearing his statement, the county attorney proceeded with the prosecution.

When plaintiff was arraigned in district court, Mr. McMahon was appointed as his attorney to defend him. They consulted together. Plaintiff said his attorney "knew the state of facts," that they had talked the thing all over in his office and went from there to the court. There Mr. McMahon made a long statement. He told the

court he had spent an hour and a half with plaintiff; that plaintiff was willing to enter a plea of guilty; that "he believed when he took this team of horses, * * * that he bought those horses from Mr. Mosher." He had been in possession of them for three years and had paid taxes on them. Mr. McMahon further said: "I asked if he received a bill of sale or gave a note or mortgage or had any evidence that he purchased the team and he said no except one witness that was dead * * * so I get from his testimony and from his own admissions to me that he never had any title to those horses. He might have thought he did but he didn't. * * * I believe * * * that technically he would be perhaps found guilty by a jury * * * the chances are he might be found guilty by a jury supposing he should take the stand and go and face a trial." It is apparent therefore that Mr. McMahon was fully possessed of all the facts as plaintiff claimed them to be.

With this state of facts I think there was probable cause as a matter of law. What better proof of probable cause can we have than the belief of the accused and of his attorney that the accused is guilty, a belief arrived at after full statement of the facts by the accused. I think also that defendant was protected by the advice of the county attorney. Plaintiff made his own statement to the county attorney and after hearing his version of the case the county attorney advised him he was guilty and proceeded with the prosecution. A complainant should not be required to make a more exculpatory statement to counsel than the accused makes for himself.