## WALTON TRUST CO. et al. v. TAYLOR.

(Circuit Court of Appeals, Eighth Circuit. September 26, 1924.)

No. 6486.

1. **Pleading ⬤⟿428(4) — Complaint cannot be tested by objecting to introduction of evidence.**

Objection to introduction of evidence on ground complaint does not state facts sufficient to constitute cause of action is not proper way of testing sufficiency of complaint, and will not be entertained for that purpose.

2. **Appeal and error ⬤⟿728(1) — Assignment not complying with rule 11 of Circuit Court of Appeals not considered.**

Assignment of error to admission of evidence, wholly failing to comply with rule 11 of Circuit Court of Appeals, will not be considered, unless questions involved are of importance.

3. **Trial ⬤⟿418—Demurrer to evidence waived by introduction of evidence by defendants.**

Demurrer to evidence at close of plaintiff's case was waived by introduction of evidence by defendants.

4. **Malicious prosecution ⬤⟿18(7) — Defendants, refraining from trying to learn facts, cannot contend there was probable cause.**

Defendants cannot deliberately refrain from trying to learn facts readily ascertainable, and afterwards successfully contend that half facts in their possession were sufficient basis for probable cause.

5. **Malicious prosecution ⬤⟿21(2)—Imparting of half facts to attorney not sufficient foundation for defense of advice of counsel.**

Defendants, who deliberately refrained from trying to learn facts readily ascertainable, and imparted half facts to attorney, could not contend there was sufficient foundation for defense of advice of counsel.

6. **Malicious prosecution ⬤⟿71(2–4)—Probable cause, malice, and advice of counsel held for jury.**

Probable cause, malice, effect of action of justice of peace in binding plaintiff over for trial, and effect of advice of prosecuting attorney *held* for jury.

7. **Trial ⬤⟿141, 143—Verdict directed, where evidence is undisputed, or of conclusive character.**

It is court's duty to direct verdict, where evidence is undisputed, or evidence is conflicting, but of so conclusive a character that court would set aside verdict in opposition to it,

8. **Malicious prosecution ⬤⟿72(2, 4)—Instructions on probable cause and malice held correct.**

Instructions on probable cause and malice *held* to correctly state law.

9. **Malicious prosecution ⬤⟿24(6) — Binding over by justice of peace not conclusive on question of probable cause.**

Action of justice of peace in binding over to circuit court after preliminary hearing is not conclusive on question of probable cause,

but only constitutes prima facie evidence thereof.

**10. Malicious prosecution ⬅️22 — Advice of prosecuting attorney may be relied on.**

If defendants, before making complaint against plaintiff, made full disclosure of all facts in their possession, and which they could reasonably obtain, to prosecuting attorney, and were advised by him that crime had been committed, and there was probable cause to believe plaintiff was guilty, and prosecuting attorney drew complaint, defendants could rely on such advice, and would not be liable for malicious prosecution.

**11. Malicious prosecution ⬅️72(3) — Instruction submitting question whether there was omission in laying case before prosecuting attorney held proper under evidence.**

Instruction that only question for jury in connection with advice of counsel was whether, in their judgment, proper disclosure of all facts was made to prosecuting attorney, *held* proper under evidence.

**12. Malicious prosecution ⬅️72(5) — Instruction on express malice as foundation for punitive damages held warranted.**

Instruction on question of express malice as foundation for punitive damages *held* warranted by evidence.

**13. Trial ⬅️260(1) — Requested instructions, covered by given instructions, properly refused.**

Court did not err in refusing requested instructions covered by given instructions.

**14. Trial ⬅️139(1)—Weight of evidence is for jury.**

Weight of evidence is for jury.

**15. Malicious prosecution ⬅️64(1) — Evidence held to support finding of malicious prosecution.**

In action for malicious prosecution in charging plaintiff with forgery of deed of trust, evidence *held* sufficient to support verdict for plaintiff.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by Newton L. Taylor against the Walton Trust Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

John H. Lucas, of Kansas City, Mo. (William C. Lucas, of Kansas City, Mo., on the brief), for plaintiffs in error.

Charles O. French, of Kansas City, Mo. (Henry M. Beardsley and John F. Cell, both of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and BOOTH and REEVES, District Judges.

BOOTH, District Judge. This was an action by Taylor against Walton Trust Company, John B. Walton, and William E. Walton for damages for malicious prosecution, false arrest, and false imprisonment. The complaint alleged that the defendants falsely, maliciously, and without probable cause procured the plaintiff to be charged before a justice of the peace of Bates county, Mo., on a written complaint filed with the justice of the peace, with having, about January 3, 1914, forged and uttered a deed of trust in the name and as the act of one William P. Winn, to secure a promissory note purporting to have been executed by Winn to the Walton Trust Company; that the defendants maliciously and without probable cause procured plaintiff to be arrested, imprisoned, brought before said justice of the peace, and bound over to the circuit court of said county on the charge of forgery; that on the trial in said circuit court plaintiff was found not guilty by the jury and was thereupon discharged. A second count of the complaint alleged false arrest and false imprisonment of plaintiff at the procurement of the defendants in connection with the same charge of forgery. Actual and punitive damages were asked on each count. The separate answer of J. B. Walton contained a general denial, and in addition it alleged that the prosecution of plaintiff had been commenced only after consultation with an attorney and upon his advice. The answer of the other defendants was a general denial.

At the close of the evidence the court, on motion of the defendants, ordered the plaintiff to elect upon which count he would stand, and plaintiff chose the count for malicious prosecution. A verdict was returned for both actual and punitive damages. Writ of error has brought the case to this court. The parties will be designated as in the court below.

There were seven assignments of error filed. The brief of defendants contains no proper "specification of the errors relied upon," as required by subdivision second of paragraph 2 of rule 24 of this court, and not all of the questions discussed in their brief are covered by the assignment of errors. Under these circumstances, our discussion may not be so broad as the arguments of counsel.

[1] 1. It is contended that the court erred in overruling defendants' objection to the introduction of any evidence, on the ground that the complaint did not state facts sufficient to constitute a cause of action. Defendants in their brief have not pointed out where in the record such objection was made and overruled; but, if there was such a ruling, it was clearly right. It is settled in this circuit that such an objection is not the proper way of test-

ing the sufficiency of the complaint, and will not be entertained for that purpose. United, etc., Cement Co. v. Harvey, 216 F. 316, 132 C. C. A. 460.

[2] 2. There is considerable discussion in defendants' brief of alleged errors (a) in the admission and (b) in the exclusion of evidence. Questions of neither class can properly be considered here. The assignment of error No. VI, relating to the former class, wholly fails to comply with rule 11 of this court, and the questions involved are not of such importance as to persuade us to consider them despite the nonobservance of the rule. As to the latter class, there is no assignment of error whatever.

[3] 3. Another assignment of error challenges the overruling of the demurrer to the evidence, at the close of plaintiff's case. This assignment is not available, inasmuch as the demurrer was waived by the introduction of evidence by the defendants. Crowell Bros. v. Panhandle Co. (C. C. A.) 271 F. 129.

4. Error is alleged in overruling motion for a directed verdict at the close of all the testimony. This requires a consideration of the evidence in the case. It was shown by undisputed testimony that, in connection with a certain mortgage loan made by the defendant company at its office in Butler, Bates county, Mo., forgery of the mortgage papers had been committed, in the signature of William P. Winn. This was in January, 1914. At the time of the transaction, the forger was in the presence of J. B. Walton and Wm. Choate, an employé, for several hours; he was also in the presence of and seen by Allen, Nix, and Ewin, other employés of defendants. The forgery was discovered in January, 1915, when notice for the payment of interest was sent to the real owner of the land, and he repudiated the whole mortgage loan transaction. In February, 1915, plaintiff, Taylor, who was a stranger to defendants, wrote a letter to defendant company on a business matter. The letter was written on the stationery of the Snyderhoff Hotel at Kansas City. W. E. Walton, one of the officers of defendant company, compared the handwriting of the letter with that of the Winn mortgage papers, and concluded that both were by the same person. He asked a number of other persons for their opinions, and they concurred in his conclusion. Thereafter he consulted Mr. Chastain, the prosecuting attorney of Bates county, and had several talks with him in regard to the matter.

There was also evidence to the effect that W. E. Walton went to the Snyderhoff Hotel, saw the proprietor and his wife, and learned that they both knew Taylor. They told him that they thought he could find Taylor at a certain flat building which they said Taylor owned, and to which they directed him. Walton took a street car, rode by the place, but went home without making any inquiries. There was also evidence to the effect that, prior to the arrest of Taylor, the defendants had ascertained that the real forger had deposited the draft received from the Walton Trust Company in a bank at St. Louis, and that he had at Little Rock, Ark., issued a check against the deposit, signed W. P. Winn, although he was known in Little Rock as Charles W. Bean.

There was also evidence tending to establish the following facts: On August 28, 1915, as defendant J. B. Walton was passing along one of the streets in Kansas City, Mo., he saw a man that he thought was the one who had made the mortgage papers. He turned and followed the man some distance, and into an office building. The man went into the office of the Ennis Real Estate Company. Walton watched him from the lobby. When the man left, Walton stepped into the office and inquired the man's name. He was told it was N. L. Taylor. Walton immediately turned and went out and followed the man again, a short distance, but finally quit. Without making further inquiry, Walton telephoned to the prosecuting attorney that he had seen Winn. On reaching Butler that night, Walton told the prosecuting attorney that he had seen Taylor in Kansas City, and that he was the man who had signed the papers as W. P. Winn. Between the time when Walton telephoned from Kansas City and his arrival at Butler, a warrant for arrest had been procured from Justice of the Peace Catron, without the filing of a complaint. On his arrival at Butler, Walton signed the affidavit of complaint against Taylor; two days later this was filed with the justice. August 30th Walton took the warrant to Kansas City and gave it to the chief of police; Taylor was arrested the same day and lodged in jail.

Meanwhile, on August 29th, Walton had instructed Choate and Ewin to come to Kansas City "to identify Taylor, the man they had known as Winn." They came, and, after he had been arrested, identified him as the man, Winn, who had executed the mortgage papers. At the time of his

arrest, Taylor protested his innocence, and later at the jail asked that a number of business men in Kansas City, whom he mentioned as friends and acquaintances, be telephoned to, so that they might come to the jail and identify him. This request was refused. J. B. Walton was present at the time. While at the jail, a photograph of Taylor was taken, and also his measurements under the Bertillon system. He was treated in a humiliating manner, both by the police officers and by Walton. Finally, in the afternoon of August 30th, he was taken to Butler, in Bates county, and there lodged in jail.

The next day a civil suit, accompanied by an attachment of property, was commenced by defendant Walton Trust Company against Taylor. A few days later a hearing was had before Justice of the Peace Catron. J. B. Walton, Choate, Nix, and Ewin testified at the hearing that Taylor was the man who, under the name of Winn, had negotiated the loan from Walton Trust Company and executed the mortgage papers.

Taylor, under advice of counsel, did not testify, for the reason, as testified by the counsel, that the hearing was not conducted in a proper and impartial manner, and Taylor was in a state of mental collapse. Taylor was bound over to the circuit court for trial, under $5,000 bond. The trial was reached, and the prosecuting attorney, at the close of the case, announced that on the evidence adduced, he would not ask for a verdict of guilty. A verdict of not guilty was accordingly returned.

The present suit was thereupon brought by Taylor. Upon the trial it was again sought to be proved that Taylor was in fact the man who executed the forged Winn papers. Witnesses again compared the forged writings with admittedly genuine writing of Taylor, and reached the conclusion that they were written by the same person; again J. B. Walton, Choate, Nix, and Ewin identified Taylor as the man who had negotiated the Winn loan and signed the forged signature. But there was also abundant evidence tending to show that Taylor was, and for many years had been, a resident of Lincoln, Neb.; was in the real estate business there, and bore a good reputation; that he owned property, both there and in Kansas City; that he had a wife and family; that he frequently came to Kansas City, transacted business there, and was well known by real estate men in that city.

It is a reasonable inference that all this and more would have been readily learned, if W. E. Walton had followed up, instead of abandoning, the inquiry which he started at the Snyderhoff Hotel, or if J. B. Walton had followed up, instead of abandoning, the inquiry which he started at the real estate office of Ennis & Co., or if they had made inquiries at Lincoln, Neb., where, as the evidence shows, they understood Taylor was, a few days prior to his arrest. And from the testimony of witnesses at the trial, giving details of the transaction in which Chas. W. Bean, at Little Rock, had signed the name of W. P. Winn to the check for $500 above mentioned, it might fairly be inferred that, if defendants had pursued their investigations at Little Rock with ordinary care, they would have learned that Chas. W. Bean and N. L. Taylor were two entirely different men. Such facts, if learned, would have tended strongly to show the improbability of defendants' theory that Taylor was the forger of the Winn papers.

[4, 5] Defendants could not deliberately refrain from trying to learn facts readily ascertainable, and afterward successfully contend that the half facts in their possession were a sufficient basis for probable cause; nor would the imparting of such half facts to an attorney form a sufficient foundation for the defense "advice of counsel."

[6] Such being the state of the evidence, we are clearly of opinion that the questions of probable cause, malice, the effect of the action of the justice of the peace, the effect of the advice of the prosecuting attorney were all properly left to the jury. Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116; Brown v. Selfridge, 224 U. S. 189, 32 S. Ct. 444, 56 L. Ed. 727; Ambs v. Railway Co. (C. C.) 114 F. 317; Stubbs v. Mulholland, 168 Mo. 47, 67 S. W. 650; Carp v. Insurance Co., 203 Mo. 295, 101 S. W. 78.

[7] The rule which should govern a trial court in the disposal of a motion for a directed verdict at the close of the evidence has been frequently stated by this court. "It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it." Fricke v. International Harvester Co., 247 F. 869, 160 C. C. A. 91, and cases cited. In our opinion the instant

case did not come within either of the two classes mentioned, and the motion for a directed verdict was properly overruled.

5. Several assignments of error direct attention (a) to certain portions of the charge of the court to the jury; (b) to the failure to give certain instructions requested by defendants; (c) to the giving of certain instructions requested by the plaintiff. We have given these several matters careful consideration. The learned trial judge gave to the jury a very clear and exhaustive charge covering completely the various issues submitted. Only its length, which was necessary under the facts and circumstances, prevents us from reproducing it here, in its entirety.

Following its general charge, the court gave certain instructions requested by the parties respectively, but before so doing it said: "The court will now read some instructions on both sides, and you will take them as the law of the court, viewed in the light of what the court has already stated or may hereafter state in relation to the case. In other words, these instructions are not to be taken in any wise to conflict with what the court has already announced."

On the question of probable cause the court said: "To sustain an action for malicious prosecution, the plaintiff must establish that the defendant had no probable cause for such prosecution and acted with malice. Both must concur; that is, both want of probable cause and malice. The burden of showing both these things is upon the plaintiff. Probable cause means reasonable cause to believe that plaintiff was guilty, based on facts and circumstances sufficient in themselves to induce such belief in an ordinary person, and such facts and circumstances sufficient in the judgment of the jury to induce such belief must exist within the knowledge of the defendant or defendants charged at the time such prosecution is initiated."

And at the request of plaintiff the court also charged: "The court instructs the jury that by 'probable cause' is meant reasonable ground and suspicion, supported by circumstances sufficiently strong within themselves to warrant a prudent or cautious man in a belief that the accused was guilty of the offense charged; and if the jury believe from the evidence that the defendants acted maliciously, as that term is defined in other instructions herewith given you, or were actuated with hostile and vindictive motives against the plaintiff, and that said prosecution was without probable cause as

herein defined, then they should find their verdict for the plaintiff."

On the question of malice, the court charged as follows: "Malice may be inferred from want of probable cause, but proof of malice, either express or implied, will not establish want of probable cause. If you find the defendants had such probable cause for believing the defendant guilty, no malice, however distinctly proved, will render the defendants liable; that is, if the defendants had probable cause for believing him guilty, it does not make any difference with how much malice they may have acted. If you believe there was no such probable cause for believing defendant guilty of the offense charged, you are at liberty therefrom—that is, from the absence of reason or probable cause—to infer malice. In other words, malice, as implied in the instructions which the court is now giving you in this connection, does not necessarily mean ill will, hatred, or any active expression of such emotion, but only a wrongful act done intentionally without legal justifications or excuse."

And at the request of plaintiff: "The jury are instructed that there are two kinds of malice, malice in fact and malice in law. The former in common acceptation means ill will against a person; the latter is a wrongful act done against a person intentionally. If, therefore, the jury believe from the evidence that the defendants were moved by ill will against the plaintiff, or that the prosecution of plaintiff was wrongfully and intentionally caused by them, or was wrongfully and intentionally maintained by them after said prosecution was begun, then the jury should, as against such defendants, find that such prosecution was malicious."

[8] We think these instructions correctly state the law. 26 Cyc. 8; Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116; Blunk v. A., T. & S. F. Ry. (C. C.) 38 F. 311; Ambs v. A., T. & S. F. Ry. (C. C.) 114 F. 327; Carp v. Ins. Co., 203 Mo. 295, 355, 101 S. W. 78; Stubbs v. Mulholland, 168 Mo. 47, 74, 67 S. W. 650.

[9] On the matters of the binding over of plaintiff by the justice of the peace and the acquittal of plaintiff in the circuit court, the following was said:

"Inasmuch as the hearing before the magistrate—that is to say, the justice of the peace—was for the express purpose of inquiring into the existence of probable cause, and inasmuch as in this case such inquiry was made which resulted after a hearing on

the merits in the conclusion and judgment of the magistrate that the plaintiff should be held for trial in the circuit court, this judgment of the magistrate constitutes in law prima facie evidence of such fact, namely, probable cause to believe that the defendant was guilty. By prima facie evidence is meant that degree of proof which in the absence of satisfactory rebutting proof, will justify a jury in concluding that the defendants had probable cause to believe the plaintiff guilty. * * *

"Now, then, speaking again of the evidence and of * * * the finding of the magistrate upon the preliminary hearing: Such evidence, gentlemen, is not conclusive, but is to be taken and considered by you in connection with all the evidence in the case. So the acquittal of the defendant, or the dismissal or abandonment of the prosecution, are inadmissible to prove lack of probable cause, and have no bearing thereon, although, of course, it is proper to show that the prosecution has terminated favorably to the accused. It follows that the issue you are now trying is not whether the plaintiff was in fact guilty or not guilty of the offense with which he was charged, but simply if the defendants, when instituting the prosecution against plaintiff, acted with the honest belief that he was guilty, and upon facts and circumstances which offered to the defendants a reasonable ground for such belief; consequently all evidence which has been introduced by either side, which might tend to show, respectively, that the plaintiff was or was not guilty of the offense charged, is not to be considered by you for that purpose, but only as bearing upon the question of whether, in your opinion, the defendants had probable cause to believe that the plaintiff was guilty, and were justified in instituting the prosecution, even though the prosecution ultimately turned out favorably to the plaintiff."

Counsel for defendants contend that the action of the justice of the peace was conclusive on the question of probable cause, unless the plaintiff showed such action of the justice was procured by fraud or perjured testimony, citing Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68. We do not think the case supports counsel's contention. The question there involved was not as to the evidentiary value of a commitment on the question of probable cause; but the question involved was as to the evidentiary value of a judgment of conviction which had been reversed.

The charge of the trial court in the in-

stant case as to the effect of the commitment by the justice of the peace is amply sustained by authority. 26 Cyc. 39; Flackler v. Novak, 94 Iowa, 634, 63 N. W. 348; Ambs v. A., T. & S. F. Ry. (C. C.) 114 F. 327. On the question of advice of the prosecuting attorney and the action taken by him in filing an information, the court in its charge said:

"If the defendants, before making the complaint against plaintiff, made a full disclosure of all the facts in their possession and which they *could reasonably obtain,* to the prosecuting attorney, and were advised by him that a crime had been committed and there was probable cause to believe plaintiff was guilty and the prosecuting attorney himself, under such circumstances drew the complaint, defendants would have probable cause and would not be liable for malicious prosecution. The only question for the jury in such connection is whether in their judgment upon the evidence, such disclosure was made and whether there was any essential act of omission in laying the case before the prosecuting attorney. This question is submitted to you for your decision upon the testimony before you."

[10] Counsel for defendants object to the last two sentences of this charge on the ground that there is no evidence on which to base it. The charge was a correct statement of the law. Blunk v. Railway (C. C.) 38 F. 311; Coggswell v. Bohn (C. C.) 43 F. 411; Sharpe v. Johnston, 59 Mo. 557; Carp v. Insurance Co., 203 Mo. 295, 356, 101 S. W. 78; Stubbs v. Mulholland, 168 Mo. 47, 67 S. W. 650; Burke v. Watts, 188 Cal. 118, 204 P. 578; Jones v. Flaherty, 139 Minn. 97, 165 N. W. 963; Eversoll v. Mosher, 152 Minn. 449, 189 N. W. 127.

[11] And there was evidence pro and con whether the facts actually known by defendants had been fully and correctly stated by them to the prosecuting attorney, touching a number of matters, and, more important still, whether they had stated to him all the "facts which were readily ascertainable by them." On the question of punitive damages, the court in its charge said:

"In its petition plaintiff has added a prayer for exemplary or punitive damages; that is to say, damages apart from actual damages which may be allowed in certain cases as a punishment to a defendant and as a deterrent from future unwarranted acts of a like nature. Such damages, where they are inflicted, are addressed entirely to the judgment of the jury as to the amount, not to exceed, however, the amount claimed

therefor in the petition; but before such damages can be allowed it must appear to the satisfaction of the jury either that there was actual malice, in the nature of ill will on the part of the defendants toward the plaintiff, or that the action of the defendants was so inexcusable and unreasonable that it constitutes a wanton, gross and reckless disregard of the rights of the plaintiff, amounting to actual malice or ill will. Unless such a situation exists, a jury is not justified in imposing exemplary or punitive damages."

[12] As bearing on the question of express malice as a foundation for punitive damages, in addition to the evidence relating to want of probable cause, there was evidence touching the treatment of Taylor at the Kansas City jail by J. B. Walton and by others in his presence, the denial of Taylor's request that some of his friends be notified of his arrest, the treatment accorded him by Walton on the train going to Butler and at the jail at that place, J. B. Walton's attitude when on the witness stand at the hearing before the justice of the peace, and the hasty civil action commenced by defendants against Taylor immediately after his arrest, with attachments against his property. The trial court not only gave the jury correct statements as to the law of the case, but it also, by apt reference to the testimony, pointed out how the jury should apply the law to the facts found by them in order to reach a verdict. An examination of the record discloses that there was substantial evidence to which each of the propositions of law stated by the court was applicable.

[13-15] The charge of the court covered all of the requested charges by defendant, in so far as they embodied correct statements of the law and were apposite to the case in hand. The weight of the evidence was for the jury. There was substantial evidence to support the verdict, and the judgment is affirmed.