92  707
101   68

92  707
f130  334

B. P. HOLDEN v. C. MERRITT, Appellant.

Malicious Prosecution. Where one complains to a United States marshal who sends an inspector to him, to which inspector he makes statements which lead the inspector to file information upon which plaintiff is arrested, it is a sufficient instigation of prosecution though defendant did not order process to issue or aid in its execution.

SAME. It is no defense that a postoffice inspector was not justified in charging an offense against a certain section of the United States statutes upon the statements made to him by the defendant. *Newman v. Davis,* 59 Iowa, 449, distinguished.

SAME. When the information is filed wholly on what was told the inspector, it is discretionary whether what defendant said to the marshal who sent for the inspector, shall be admitted.

Justification. It is not a defense that an attorney was consulted, when he gave no advice and simply referred defendant to the United States marshal.

SAME. Nor that the inspector advised the prosecution; especially when it is not shown that the case was fairly and truthfully stated to the inspector.

Malice. A statement that defendant would put plaintiff behind the bars if he did not go out of partnership peaceably, is admissible, on the question of malice in prosecuting.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

SATURDAY, DECEMBER 15, 1894.

ACTION at law to recover damages for malicious prosecution. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*H. M. Remley* and *Thompson & Stewart* for appellant.

*Smith & Clemens* and *J. W. Jamison* for appellee.

DEEMER, J.—It is claimed in the petition that the defendant maliciously, and without probable cause,

induced one Eaton, a postoffice inspector of the United States for the state of Iowa, to file an information before a United States commissioner accusing plaintiff of having taken from the postoffice in Central City, Iowa, about the second of July, 1891, a letter or package addressed to the defendant, and of opening the same, without defendant's consent, with the design of obstructing the correspondence and prying into the business and secrets of the defendant, and with endeavoring to conceal and secrete the correspondence of the defendant. It is averred that the charge was wholly false, and without probable cause, and that, when presented to the grand jury, it wholly ignored it, and plaintiff was discharged. The defendant denies making any charge against the plaintiff to the post-office authorities, and says that all he did was to answer inquiries propounded to him by the government inspector who was investigating the matter, in which he stated that plaintiff had, without his knowledge and consent, opened a private letter addressed to him, at Central City, Iowa; that the statement so made was true, was made in good faith, and was privileged.

In order to recover, it was necessary for plaintiff to establish each of the following matters: *First,* that he was prosecuted in a criminal action, substantially as alleged; *second,* that the prosecution was instigated or procured by the defendant; *third,* that the prosecution has terminated in the acquittal or discharge of the plaintiff; *fourth,* that it was without probable cause; and, *fifth,* that it was malicious.

It is insisted on the part of the defendant that there is no evidence that he instigated or procured the prosecution. The evidence shows that from April 1 to July 4, 1891, the plaintiff and defendant were engaged in the general merchandising business, at the town of Central City, under the firm name of Merritt & Holden. They did not

get along pleasantly, and on the third or fourth of July
dissolved partnership.   There is testimony tending to
show that, about the time of the dissolution, Merritt
remarked to witnesses in the case "that Holden had
been opening his mail, and he could prove it, and that
he would put him where the dogs wouldn't bite him."
Merritt says himself that shortly thereafter he con-
sulted with the Honorable William G. Thompson in
regard to accusing plaintiff of the crime charged
against him; that Thompson told him to see Francis,
the deputy United States marshal; that he concluded
to lay the matter before the United States officers, and
went to see Mr. Francis, and to him stated the case;
that thereafter Eaton, the inspector, came to see him
and that he related the facts, as he claims them to be,
to Eaton.   There is testimony tending to show that
Francis communicated the fact that complaint had
been made to him to Eaton, and that Eaton went to
see defendant by reason of this complaint, and that
Eaton, after hearing the statements of the defendant,
and of his son, filed the information upon which plain-
tiff was arrested.   There is also testimony tending to
show that, after the examination of plaintiff before the
commissioner, defendant said to the plaintiff, "If you
had behaved yourself, and made no disturbance, I
wouldn't have done anything with you."   If the jury
believed this testimony, as they had a right to do,—
although much of it was denied by the defendant,—then
it is apparent that the defendant set the machinery of
the law in motion; at least, the jury was authorized to
so find.   It need not be shown that the defendant
ordered or directed the warrant or process to issue, or
that he participated in its execution.   If he, on
his own motion, gave information or made
complaint to the officers of the law in such a
manner as that, in the regular and ordinary course of
events, an arrest must be made, or will probably

follow, this is sufficient to warrant the jury in finding
him the real prosecutor. *Grant v. Deuel*, 3 Rob. (La.)
17; *Dennis v. Ryan*, 65 N. Y. 385; *Walser v. Thies*,
56 Mo. 89.

Again, it is insisted that defendant simply gave to
Eaton, the inspector, a true statement of the facts in
the case, and left it with him to determine wheth-
er an offense had been committed, and the pro-
priety of the proceeding with the charge, and
that the rule announced in *Newman v. Davis*, 58 Iowa,
447, 10 N. W. Rep. 852, wherein it is said: "If a jus-
tice of the peace, by mistake of judgment, conceives
an act to be a felony which is not a felony, and in con-
sequence of that mistake causes an innocent person to
be arrested and imprisoned, the law will not hold the
person who made the complaint responsible, in this
form of action, for the consequences thereof,"—should
apply. It will be noticed in that case that no informa-
tion was filed against the defendant in the criminal
action. The prosecuting witness simply stated the facts
to the justice, who wrote them in his docket, and there-
upon issued a warrant for the arrest of the party
charged. The information in that case did not charge
upon the person complained against any specific offense,
nor did the facts stated impute any crime. No infor-
tion was at any time filed. The language above set
forth from the opinion related to this state of facts,
and the holding of this court was that the defendant in
that case had not wickedly and maliciously instituted
a prosecution against the plaintiff, charging him with
a commission of a crime. How different is the case at
bar. In this case an information was filed charging
a distinct offense under the Revised Statutes of the
United States (section 3892); and if there was any
mistake or defect, it was that the facts stated to the of-
ficer did not amount to a crime under the statutes above
referred to. The case then comes more nearly within

the rule of *Shaul v. Brown*, 28 Iowa, 37, and *Neely v. Driskill*, 2 Blackf. 259.

The question last presented, except in so far as it applies to the proposition that there was no prosecution of plaintiff for any crime whatever, relates more particularly to the questions of malice and probable cause. And, if it can be said that the advice of the inspector negatives the idea that there was a prosecution by defendant, then the rule obtains that the statement made to the officer must have been fairly and truthfully made, and the advice given acted upon by the defendant. There was testimony in the case from which the jury might and probably did find, not only that the defendant instituted the prosecution, as we have before stated, but that he did it of his own volition, without taking any advice, and that he did not truthfully state the facts to the inspector who came to investigate the case. We are clearly of the opinion that there was sufficient testimony to warrant the jury in finding that the defendant instigated the prosecution.

II. Complaint is made of several rulings of the court in the admission and rejection of testimony. Francis, the deputy marshal, was asked upon cross-examination to state the conversation had with defendant at the time defendant made complaint to him; and the court would not permit him to answer, on the theory that it was not cross-examination. Defendant then produced the witness in his own behalf, and asked him to detail the conversation, and this was refused. As to the first ruling, it may be said that the witness had not been asked anything about the conversation, but was simply interrogated about the fact of defendant's having made complaint to him. While the court might, in its discretion, have admitted the whole of the conversation, yet, in view of the whole record, we do not think any prejudice resulted from

either of these rulings. The inspector who filed the information said that he did not file the information until after he had seen the defendant and learned the facts from him, and there is no showing that Francis detailed any of the statements made to him by defendant to Eaton; so that Eaton must have acted upon what was told him by the defendant and his son. The testimony of Francis related, then, simply to this question: Did the defendant make complaint to him that the postal laws had been violated?—and not to the exact language of the complaint. It was nowhere claimed that Eaton, in filing the information, acted upon anything that was said to Francis. The claim was that defendant, by calling Francis' attention to the matter, set the officers of the government to work to investigate the matter, and that Eaton came to defendant, and received the facts upon which he acted. The conversation between the defendant and Francis was a wholly collateral matter.

Witness Schaffer was allowed to testify as to a statement made by defendant, to the effect that if Holden did not go out peaceably, and behave himself, he would put him behind the bars. This testimony was admissible, as it tended to show malice on the part of defendant. Defendant testified that he first went to see Mr. Thompson regarding the matter of prosecuting plaintiff, and said that Thompson advised him to go to Francis. The court, on motion of plaintiff, struck out all the testimony in regard to what he told Thompson. This ruling was correct. While Thompson was an attorney, he did not give the defendant any legal opinion upon the facts, and defendant does not claim that Thompson advised him that the facts stated amounted to a crime. The exact statement of Thompson was that "he was not sufficiently posted on postal laws to give an opinion, but for me to see Francis."

Other rulings are complained of, which we have

examined, and, without setting them out, it is sufficient
to say that we find no error.

III.   Error is assigned on the court's refusal to
give certain instructions asked by the defendant.   We
think, that in so far as they announced a correct rule,
they were given by the court in his charge to the jury.
The first asked was as follows:   "(1) If you
find from the evidence that the defendant made
a truthful statement of the facts to C. D. Eaton,
and did not urge or insist upon any criminal proceed-
ings being instituted, and that C. D. Eaton, acting
upon his own judgment, based upon the facts so dis-
closed, filed an information, and a warrant issued
thereupon, under which plaintiff was arrested, then you
are instructed that the defendant is not liable, and you
will find for the defendant."   We have sufficiently
indicated our views of the law announced in this
instruction in the first paragraph of this opinion, and
need not repeat them here.   From what we have said,
it will appear that there was no error in not giving it.
We have already referred to the applicability of the rule
announced in this instruction to the facts of this case,
and it is sufficient now to say that the court correctly
refused to give it, because, if it is intended to
relate to the question as to whether the defend-
ant instigated the prosecution, it overlooks the
testimony showing, or tending to show, that defendant,
before seeing Eaton, had put the machinery of the law
in motion by making complaint to Francis, the United
States marshal, and the other testimony tending to
show that the defendant instigated the prosecution, and
by his conduct induced Eaton to make the investiga-
tion.   If its intent was to announce as a rule of
law the proposition that the advice of Eaton was
a defense, as advice of counsel is a defense to
such actions, then it is faulty in many particulars
apparent upon its reading.   See *Center v. Spring,* 2

Iowa, 393; *Acton v. Coffman,* 74 Iowa, 17, 36 N. W. Rep. 774.

The instructions given are not complained of, and as they announce correct rules of law, and as there is sufficient testimony to support the verdict, the judgment is AFFIRMED.