BERENICE G. WHITCOMB, APPELLEE, v. NEBRASKA STATE EDUCATION ASSOCIATION, A CORPORATION, ET AL., APPELLANTS.

165 N. W. 2d 99

Filed February 20, 1969. No. 37014.

Crosby, Pansing, Guenzel & Binning and Theodore L. Kessner, for appellants.

Kennedy, Holland, DeLacy & Svoboda and Thomas R. Burke, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and MORAN, District Judge.

SPENCER, J.

This is an action to recover damages claimed to have resulted from the publication of libelous matter by the defendants. The trial court held the published statements were actionable and libelous per se. The jury returned a verdict for the plaintiff in the amount of $38,500, and the defendants have perfected an appeal to this court.

The Nebraska State Education Association, hereinafter referred to as Association, is a nonprofit corporation organized to protect the educational interests of Nebraska and the welfare of the members of the teaching profession. John Lynch is its executive secretary, and Paul Belz is its director of research and staff consultant to the Commission on Professional Rights and Responsibilities of the Association, hereinafter referred to as Commission.

The plaintiff, Berenice G. Whitcomb, during the 1964-1965 school term and for some years prior thereto, was a guidance counsellor and librarian at the Winnebago, Nebraska, public schools. She had resided in the town for 25 years and had previously been in business therein.

In October 1961, a complaint was made to plaintiff by an Indian grandmother that the superintendent of the Winnebago public schools, who will hereinafter be referred to as superintendent, had been molesting a small Indian girl. Plaintiff did not communicate this information to any member of the school board, but 3 days after receiving the complaint she confronted the superintendent with the accusation. The basis of the Association's action is that plaintiff, rather than bringing the information to the attention of the Winnebago school board, used it to intimidate the superintendent for her own

purposes. When her contract was not renewed by the Winnebago school board 4 years later, she brought the accusation into the open and forced the resignation of the superintendent.

Plaintiff testified that when she confronted the superintendent with the accusation she told him that she did not believe the story but she insisted that the private reading lessons at which the occurrence was alleged to have taken place should be stopped, and he agreed to this. Plaintiff further testified that the superintendent collapsed on the desk and asked her to leave his office because he was going to cry. In December 1961, she mentioned the incident to another teacher in the Winnebago schools and thereafter visited with two other teachers about it, but did not give the information to the school board until her contract was not renewed in 1965.

In early March 1965, plaintiff was informed by a member of the Winnebago school board that she would not be rehired for the 1965-1966 school year. Plaintiff demanded a written statement to that effect. She thereafter was advised in writing that she would not be rehired because she had been causing dissension and was dissatisfied with the superintendent.

Within a day or two after being so informed, plaintiff contacted Association, of which she was a member, and requested that an investigation of the personnel policies of the Winnebago public schools be undertaken. Pursuant to this request Association sent a staff man to the community to visit with plaintiff. He interviewed plaintiff on March 18, 1965. She told him that the superintendent had continuously abused her since a 1961 incident, and had finally had her fired. Plaintiff then told the investigator about the incident and her conversation with the superintendent in October 1961. The investigator's report is that plaintiff told him: " '. . . I had put him (the superintendent) under wraps and laid down some rules which he probably didn't like—being dictated to by a teacher, but I didn't know what I could

do otherwise, because this was just almost like trying to fight the Lord, you know,—in this town.'" Plaintiff admitted on cross-examination that she had told the investigator that she had put the superintendent under wraps. On April 23, 1965, plaintiff, in a letter to an employee of Association, referring to the superintendent, said: "I compromised with the viper four years ago, much to my sorrow."

Subsequent to the oral notification that her contract would not be renewed plaintiff brought the 1961 conduct of the superintendent to the attention of the school board. Subsequently, through an attorney, she obtained affidavits which were presented to the school board and resulted in the resignation of the superintendent. On March 19, 1965, plaintiff circulated a letter to the parents of the 1962, 1963, 1964, and 1965 graduates, stating that the school board had refused to renew her contract, and requesting their assistance. Her contract was not renewed.

Subsequently, on request of the new superintendent of the Winnebago public schools, the chairman of the Commission, composed of 15 educators from throughout the State of Nebraska, directed a preliminary inquiry team to go to Winnebago to make an inquiry concerning conditions and problems in that school system. This inquiry team made its report to the full Commission. The Commission then determined that an investigation committee, consisting of five members of Association, composed of educators from various parts of the state, should be sent to Winnebago. This committee heard evidence submitted by various members of the community, including members of the school board, the new superintendent, the plaintiff, and her attorney. The committee report, which is exhibit No. 7 herein, was accepted by Commission. The report recommended that plaintiff's membership, and that of the previous superintendent of the Winnebago schools, in Association be terminated and that action be taken to revoke their teaching certificates.

The report also made recommendations to the Winnebago board of education and to the new superintendent concerning policies and programs. This action is based essentially on the statements and findings in that report.

Previous to the amendment in 1957 of section 25-840, R. R. S. 1943, when a publication was libelous per se, malice was presumed. The presumption made a prima facie case on malice so that the burden of rebutting the presumption was on the defendant. See Hall v. Rice, 117 Neb. 813, 223 N. W. 4, 78 A. L. R. 1421. In 1957, the following was added to the statute: "The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication." This changed the law by eliminating any presumption of malice and transferring the burden to the plaintiff on that issue.

So far as we are able to determine, no attempt was made by the plaintiff to comply with section 25-840.01, R. R. S. 1943, which was also added to the statute in 1957, and which, in the absence of actual malice limits recovery to special damages as therein defined, unless correction is requested as set out therein. We assume, therefore, that plaintiff's cause of action is predicated on actual malice. As stated above, section 25-840, R. R. S. 1943, now places the burden of proving actual malice on the plaintiff, and specifically provides that such malice shall not be inferred or presumed from publication.

The instructions by the trial court defined actual malice and stated that it could not be inferred from the fact of publication alone. The damage instruction included the following: "In addition thereto, if you find that defendants in publishing the matters complained of were motivated by actual malice toward the plaintiff, then in addition to the special damages, you may award plaintiff general damages for any pain, humiliation and distress of mind that you find was caused thereby."

At no place in the instructions was the jury advised

as to who had the burden of proving actual malice. This was particularly prejudicial because the trial court directed that the statements made "are actionable and libelous per se, which entitle plaintiff to recover damages as hereinafter specified in instruction No. 11, * * *." All of the burdens were placed on the defendants. From the size of the verdict, it is evident the jury considered the matters complained of to have been motivated by actual malice.

The plaintiff tendered an instruction on the issue of malice which included the following language: "If the jury finds that the defendants' publication was substantially true, then the burden is upon the plaintiff to prove that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication." This instruction was refused by the trial court, and only the last sentence was covered by the instructions given.

For the reason given, the judgment herein is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.

SMITH, J., concurring.

The Nebraska Bill of Rights, section 5, reads: "* * * in all trials for libel, both civil and criminal, the truth when published with good motives, and for justifiable ends, shall be a sufficient defense." Section 25-840, R. R. S. 1943, reads: "The truth * * * shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication."

The district court refused to allocate risks of nonpersuasion in harmony with the statute. It instructed the jury that defendants were to carry the risk on issues of good motives and justifiable ends. The instruction is traceable to an interpretation of the Constitution in Wertz v. Sprecher, 82 Neb. 834, 118 N. W. 1071. Wertz decided that for justification defendant must prove good

motives and justifible ends. It has received trenchant criticism for establishing an absolute and not a minimum standard. See Franklin, "The Origins and Constitutionality of Limitations on Truth as a Defense in Tort Law," 16 Stan. L. Rev. 789. The jury instruction was prejudicially erroneous.

No constitutional issue of a federal dimension having been raised, the majority opinion does not answer this question: Is the judgment under review a product of an unconstitutional interference with free expression? See, Puentes v. Board of Education, 392 U. S. 653, 88 S. Ct. 2271, 20 L. Ed. 2d 1341; Pickering v. Board of Education, 391 U. S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811; Beckley Newspapers Corp. v. Hanks, 389 U. S. 81, 88 S. Ct. 197, 19 L. Ed. 2d 248; Curtis Publishing Co. v. Butts, 388 U. S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094; New York Times Co. v. Sullivan, 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686.

BOSLAUGH, J., dissenting in part and concurring in part.

Our Constitution provides that in all trials for libel, "the truth when published with good motives, and for justifiable ends, shall be a sufficient defense." Art. I, § 5, Constitution of Nebraska. This provision has been generally construed to mean that the burden is upon the defendant to establish both the truth of the statement and that it was published with good motives and for justifiable ends.

In Wertz v. Sprecher, 82 Neb. 834, 118 N. W. 1071, it was noted that prior to 1875 the Constitution did not refer to truth as a defense in civil actions, and that it was unnecessary to provide that truth alone should be a defense in civil suits for libel. This court then said: "Now, if it was not the intention of the men who formed the constitutional convention in 1875 to compel the defendant in civil as well as criminal cases, if he attempted to justify, to prove good motives and justifiable ends, as well as the truth of his charges in publishing a libel, the

inclusion of the words 'both civil' in the later constitution was and is senseless and surplusage."

In 1957, the Legislature amended section 25-840, R. R. S. 1943, to provide that in libel cases: "The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication."

The effect of the opinion of the court in this case is to abandon the previous construction of the constitutional provision and adopt a construction which would have been appropriate under the provision contained in the Constitution of 1866.

But if now there is no burden of proof upon a defendant in a libel case to establish that the publication was with good motives and for justifiable ends, then the judgment should be reversed because the instructions of the court placed that burden upon the defendant.

McCOWN, J., dissenting.

I concur in Judge Boslaugh's opinion with respect to the interpretation of the constitutional provisions of Article I, section 5, of the Nebraska Constitution. If that interpretation is correct, the Legislature had no power to alter the constitutional interpretation of Wertz v. Sprecher, 82 Neb. 834, 118 N. W. 1071, although this court obviously might do so.

Section 25-840, R. R. S. 1943, applies only to a libel in which the truth of the matter published is asserted and established. In this case, the falsity of the publication was alleged, and there was evidence from which the jury might have found that one or more of the statements about the plaintiff were false. Even though the presumption of malice arising merely from publication be blocked off, the existence of actual malice, when the fact is in issue, may be inferred from falsity, absence of probable cause, or other relevant circumstances. 33 Am. Jur., Libel and Slander, § 266, p. 248.

Even under the rule of New York Times Co. v. Sulli-

van, 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686, actual malice is defined as the publication of a statement with knowledge that it was false or with reckless disregard of whether it was false or not. Mere negligence in discovering misstatements of fact is not sufficient. The case at bar was tried by both parties on the assumption that the New York Times rule was not applicable. For that reason alone, the rule should not be applied here, at least without reargument. Even if the Times rule were applicable, there is sufficient evidence to go to the jury on the issue of actual malice. Neither do I think that rule as to "public officials" was intended to extend to a school teacher whose duties do not extend to policy establishing functions. See footnote No. 23, New York Times Co. v. Sullivan, *supra*. To apply the Times rule in this situation and treat it as official conduct would, for all practical purposes, make any public employee paid from tax funds a "public official."

It is also apparent in this case that the trial court's instructions, as well as the opinion of the majority, proceed on the assumption that the provisions of section 25-840.01, R. R. S. 1943, apply to this case. That section limits recovery to special damages unless a correction is requested and not published, but it does not apply where the plaintiff alleges and proves that the publication was prompted by actual malice. It should be noted here that under Nebraska law no punitive or exemplary damages are allowable in any event.

Section 25-840.01, R. R. S. 1943, applies to "the publication of a libel by any medium, * * *." To apply it to any publication of a libel ignores the words "by any medium." The statement of the Judiciary Committee to the 1957 Legislature with respect to L. B. 318 states that the bill provides for changes in the libel law "affecting newspapers." The complete legislative statement refers only to newspapers and newspaper libel laws. The provisions for publication of a correction are clearly aimed at a public purveyor of news and information. In such

media, the correction provided for presumably is as broad and effective a way of retracting or correcting as could reasonably be required.

The term "medium" in the connotation of this section of the statute might well include newspapers, radio, television, and magazines. In some contexts it applies to a vehicle used to carry advertising. See Webster's Third New International Dictionary.

I do not believe the Legislature intended the section to apply to false and defamatory matter published in reports which had no circulation to the general public and in which a correction or retraction would not effectively undo the harm which the law ordinarily presumes in awarding general damages for a libel per se. This is particularly true where, as here, there is no issue of honest mistake or error in identity. The publications in newspapers which followed defendants' publication of the defamatory material emphasize the point.

Other states have approved similar statutes limiting general damages in libel actions with respect to newspapers. See Werner v. Southern California Associated Newspapers, 35 Cal. 2d 121, 216 P. 2d 825, 13 A. L. R. 2d 252, and the annotation following at page 277. The policy involved in such statutes is, of course, for the Legislature. However, to interpret section 25-840.01, R. R. S. 1943, as indicating a legislative intent that it applies to any and all libel, flies directly in the face of its specific legislative history, and also requires that we ignore the words "by any medium." This violates the ordinary rules of statutory construction.

Prior to the 1957 legislative changes, Nebraska, and most other states, held that malice in law is presumed from the publication of an article libelous per se and that presumption becomes conclusive unless the truth of the libel is established. Rimmer v. Chadron Printing Co., 156 Neb. 533, 56 N. W. 2d 806. See, also, 33 Am. Jur., Libel and Slander, § 266, p. 247. Unless libel per se has now been abolished in Nebraska, the burden of

proof as to malice was satisfied here unless the defendants established the truth of the defamatory matter.

The majority opinion here reverses the trial court upon the ground that the instructions failed to place the burden on the plaintiff to prove actual malice. If the instructions were prejudicial, it would appear that they were prejudicial to the plaintiff in restricting the plaintiff to special damages unless the jury found actual malice. As a practical matter, the instructions required proof of actual malice before the plaintiff could recover any general damages, even though they did not specify who had to prove it. This was not prejudicial to the defendants.