Gerald P. WHITE, Appellee,

v.

CHICAGO, BURLINGTON AND QUINCY RAILROAD, Appellant.

No. 19499.

United States Court of Appeals Eighth Circuit.

Nov. 7, 1969.

Michael T. Levy, of Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., for appellant; Harry B. Otis, Omaha, Neb., on the brief.

Robert D. Mullin, of Boland, Mullin, Walsh & Cooney, Omaha, Neb., for appellee.

Before VAN OOSTERHOUT, Chief Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendant railroad appeals from a jury verdict against it in the sum of $15,000 for malicious prosecution and $20,000 for slander. Defendant urges that the trial court erred in failing to direct a verdict on both counts; in the alternative, in failing to grant defendant's motion for new trial by reason of the alleged prejudicial comments of the trial judge and the excessive damages. We affirm.

Gerald P. White was employed by the defendant company as a truck driver. On March 25, 1966, he was reported by a Mrs. Nancy Wells as approaching her while her car and White's truck were stopped on the highway near Scottsbluff, Nebraska, with his clothing in a state of "disarray." The police immediately reported the incident to the railroad but took no action themselves.

On March 26, 1966, Everett Cole, the railroad investigator, had the sheriff summon Mrs. Wells to the court house to enable Cole to take her statement. At that time she said she noticed that the driver's slacks were open at the front and slipped off his hips. She said that he did not "expose himself." When he started toward her auto she immediately drove off. At that time the driver began checking his truck tires, still holding his slacks up with one hand.

After taking this statement, Cole took it to the county attorney and stated that based upon his "investigation," their employee, Gerald P. White, was the one involved in the incident described by Mrs. Wells in the statement. White, a trusted employee of thirteen years, was not questioned or interviewed by Cole.

The county attorney filed a criminal complaint against White for "indecent exposure."

On the morning of March 30, 1966, White, after another trip to Scottsbluff, was arrested. He was taken to the sheriff's office where they took his personal belongings, photographed him and fingerprinted him. White denied any involvement in the entire incident. He was then booked, jailed and released upon bond later that morning. On May 6, 1966, White was tried in the County

Court of Scotts Bluff County. White was acquitted after the state rested its case.

I. The defendant relies upon the Nebraska common law rule that a person who supplies information to prosecuting authorities is not liable for his action as long as any ensuing prosecution is left entirely to the official's discretion. 3 Restatement of Torts § 653; Prosser, Law of Torts § 113, at 855 (3rd ed. 1964). Cf. Brumbaugh v. Frontier Refining Co., 173 Neb. 375, 113 N.W.2d 497 (1962). Nebraska has endorsed this rule in analogous situations involving a complaint of false arrest. See Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N.W.2d 238 (1958); Jensen v. Barnett, 178 Neb. 429, 134 N.W.2d 53 (1965).

 Its application, however, is not without limitations. Where the informant knowingly gives false or misleading information or in any wise directs or counsels officials in such a way so as to actively persuade and induce the officer's decision, then the informant may still be held liable. Jensen v. Barnett, supra; Edgar v. Omaha Public Power Dist., supra; Campbell v. Yellow Cab Co., 137 F.2d 918 (3 Cir. 1943); Holden v. Merritt, 92 Iowa 707, 61 N.W. 390 (1894); 3 Restatement of Torts § 653 at 386; Prosser, Law of Torts § 113, at 855 (3rd ed. 1964). As summarized in Harper and James, The Law of Torts § 4.3 (1956):

> "It is not necessary that the defendant himself have made direct charges against the plaintiff. He may subject himself to liability by persuading, advising or encouraging others to do so if the other conditions to liability exist." *Id.* at 305.

In this regard, it is held in Nebraska that an informer's connection with the arrest may be inferred. Jensen v. Barnett, supra; Jonson v. Heller, 142 Neb. 380, 6 N.W.2d 359 (1942). In view of the verdict the plaintiff is entitled to have the evidence viewed in the light most favorable to his cause and be given the benefit of all reasonable inferences arising from the facts. See Farmers Cooperative Elev. Ass'n Non-Stock of Big Springs, Neb. v. Strand, 382 F.2d 224 (8 Cir. 1967).

The facts show that defendant's investigator conducted the entire investigation, and actually solicited Mrs. Wells to sign a statement for "possible prosecution," notwithstanding her own professed desire not to sign any complaint. And, according to Mrs. Wells, Cole falsely told her, "this same employee had been involved in a similar incident in Galesburg, Illinois, only the lady there would not sign a complaint," and told her that this man needed psychiatric treatment and the only way to get it was for her to sign a statement. She believed this, and this was her reason for signing the statement. The evidence shows that Cole did tell the county attorney in effect that "he could do whatever he wanted to do" with the statement. However, his statement cannot be isolated from all the other facts leading up to the prosecution. Cole also told the county attorney that the Burlington Railroad did not want this type of man representing them. At this point Cole did not have actual knowledge that White had done anything. He only surmised White to be the driver upon checking work records of drivers in the area and upon Mrs. Wells' description. Mrs. Wells did not know White "from Adam." He did not tell Mr. Ponder, the county attorney, whether or not he had confronted White to see if he was actually the driver involved.

It is readily apparent that the defendant's role was more than a passive and disinterested one. The railroad's role was clearly distinguishable from that of Mrs. Wells. She only described an incident as she had seen it. Cole on the other hand pointed to the guilt of a particular man based only upon his suspicion that it was White who had in fact committed misconduct. Apropos is the language of an early false arrest case. In Holden v. Merrit, 92 Iowa 707, 61 N.W. 390 (1894), the defendant merely talked to the deputy United States Marshal about his suspicion that his former part-

ner was opening his mail to steal business secrets. This lead to an investigation by the postal inspector who even interviewed the defendant. The Iowa Supreme Court said:

"[I]t is apparent that the defendant set the machinery of the law in motion; at least, the jury was authorized to so find. It need not be shown that the defendant ordered or directed the warrant or process to issue, or that he participated in its execution. If he, on his own motion, gave information or made complaint to the officers of the law in such a manner as that, in the regular and ordinary course of events, an arrest must be made, or will probably follow, this is sufficient to warrant the jury in finding him the real prosecutor. Grant v. Deuel, 3 Rob. (La.) 17; Dennis v. Ryan, 65 N.Y. 385; Walser v. Thies, 56 Mo. 89." *Id.* 61 N.W. at 391.

We conclude that Cole's conduct and statements to Mrs. Wells and the county attorney and the overall circumstances surrounding the case could be viewed by a trier of fact in terms of persuasion and inducement to prosecute.

Defendant additionally argues that there existed "probable cause" as a matter of law, thus justifying Cole's actions. Defendant relies upon the "advice of counsel" rule. The Nebraska Supreme Court said in Clausen v. Omaha Loan & Bldg. Ass'n, 131 Neb. 666, 269 N.W. 517 (1936):

" 'As a general rule, "one who, before instituting a criminal prosecution, makes a full, fair, and honest statement to an attorney of all the facts within his knowledge, *or which he could have ascertained by the exercise of reasonable diligence,* bearing upon the guilt of the accused, and in good

faith acts upon his advice, will not be liable in an action for malicious prosecution." ' Duffy v. Scheerger, 91 Neb. 511, 136 N.W. 724, by Letton, J.; Jensen v. Halstead, 61 Neb. 249, 85 N.W. 78, Norval, C. J." (Emphasis ours.) *Id.* at 670–671, 269 N.W. at 520.

This rule although somewhat deviate from the general rule,[1] is explained in Brewer v. Fischer, 144 Neb. 712, 14 N.W.2d 315 (1944). In Bechel v. Pacific Exp. Co., 65 Neb. 826, 91 N.W. 853 (1902), the court said:

"The strongest point made on behalf of plaintiff is that the prosecuting witness and the officers of the defendant corporation neglected to go to Mr. Bechel before beginning the prosecution and learn his version or explanation of the transactions upon which the prosecution was founded. Undoubtedly a person who suspects another having committed an offense is bound to verify his suspicions by such inquiry as reasonable care and prudence would suggest, under the circumstances of the particular case, before making a complaint. * * * If he neglects to make such inquiry as would be natural and reasonable under the circumstances of the case, he is chargeable with notice of the facts which such inquiry would have disclosed." *Id.* at 828–829, 91 N.W. at 854.

This court also followed the Nebraska rule in Walton Trust Co. v. Taylor, 2 F.2d 342 (8 Cir. 1924). There the defendant failed to confront the plaintiff of his suspicion that plaintiff had forged a deed of trust before the defendant reported to law enforcement officers.

The court in discussing probable cause reasoned:

"Defendants could not deliberately refrain from trying to learn facts

1. Professor Prosser is critical of this rule saying:
 "*Some courts have gone further, and have required that the defendant use the diligence of a reasonable man to ascertain anything that he does not know before consulting counsel,* but the prevailing view, which seems the better

one, is that this is unnecessary where he informs the attorney of the state of his information and is assured that he need not seek to learn anything more." (Emphasis ours.) Prosser, Law of Torts § 113, at 862 (3rd ed. 1964).

readily ascertainable, and afterward successfully contend that the half facts in their possession were a sufficient basis for probable cause; nor would the imparting of such half facts to an attorney form a sufficient foundation for the defense 'advice of counsel'.

" * * * we are clearly of opinion that the questions of probable cause, malice, * * *, the effect of the advice of the prosecuting attorney were all properly left to the jury." *Id.* at 345.

Under the *Bechel* case, one does not have to contact an accused in every case before making a report. However, where such inquiry might be considered "natural and reasonable under the circumstances of the case" then further investigation is required. One who fails to make the investigation of a reasonable man is chargeable with the knowledge of facts which such inquiry would thereby have disclosed. These facts when obtained, must be such that they would "materially alter the opinion produced by information already acquired." 65 Neb. 829, 91 N.W. at 854. It also should be noted that in this case as distinguished from most situations, there was no danger of the accused's flight nor personal injury. White had been a faithful employee for over thirteen years. Involved was a sensitive and embarrassing charge; Mrs. Wells "thought" the driver was "sick." Yet her statement to Cole was at best replete with ambiguity as to who the driver was and whether anyone was actually guilty of any misconduct.

If Cole had immediately contacted his co-employee White, it is readily apparent that White would have categorically denied Mrs. Wells' statement as being involved in any such incident while on the road that day. He would have been able to state whether he had stopped his truck on the day in question. He explained at trial that he recalled stopping on the highway to check his truck tires on three occasions in March 1966. He would have informed Cole that, like most drivers, he often drove with his belt unbuckled. With this explanation and Mrs. Wells' express denial of any indecent exposure, we cannot say as a matter of law that such additional information would not have altered a reasonable man's opinion as to whether any criminal misconduct had taken place. We find that the court did not err in submitting the issue of probable cause to the jury.

II. The defendant moved for a mistrial during the presentation of its defense of the malicious prosecution by reason of the court's examination of the witnesses Cole, Wells and Ponder. We have examined these contentions in detail and find no reversible error. The court's questions to Mrs. Wells and Cole were for purposes of clarifying conclusory statements by the parties. It is understandable for counsel to allow a witness' conclusory answer to slip by. The court's inquiry to enable a witness' answer to be communicative and meaningful can never serve as ground for error, even though in retrospect it might be claimed that the explanation was harmful to the losing party.

It is agreed that the trial court's examination of the county attorney, James Ponder, could be reasonably interpreted as going beyond mere explication of a conclusory answer or ambiguous situation. It is suggested that the trial judge was questioning the credibility and competency of the witness and that his inflection and tone of voice proved this. However, assuming arguendo that these comments and the manner in which they were made, can be considered error, a holding we do not make, we are satisfied that they do not carry such weight as to cause reversal. We say this, not unmindful of this court's concern expressed in earlier cases that, "It may well be the less comment or interference by the trial judge with the examination of witnesses, the less opportunity for prejudice to basic rights to a fair trial." Ray v. United States, 367 F.2d 258, 262 (8 Cir. 1966). However, we have continued to treat even erroneous comment as harmless error, unless it rises to that conduct which

was intended or "calculated to disparage" a party in the eyes of the jury. Adams Dairy Co. v. St. Louis Dairy Co., 260 F.2d 46, 56 (8 Cir. 1958); La Barge Water Well Supply Co. v. United States, 325 F.2d 798 (8 Cir. 1963). We have examined the record and find no sound basis for inferring that the jury was prejudicially influenced by the court's interrogation.

III. Plaintiff's second count was for alleged slanderous statements by defendant. Plaintiff's evidence focused on these allegations: (1) On March 25, 1966, the defendant employee Cole falsely and maliciously told Sheriff Warrick of Scotts Bluff County, Nebraska, that:

"We have received a complaint against Gerald P. White, an employee of Burlington Truck Lines, which accuses him of the offense of indecent exposure."

(2) On March 26, 1966, the defendant employee Cole told Mrs. Wells in substance:

"This is not the first time we have had a complaint on this man (referring to this plaintiff). We received a similar complaint in Galesburg, Illinois sometime before. On one previous occasion a woman had made a complaint against this man (still referring to plaintiff) but refused to sign a statement and consequently the authorities were unable to take any action against him."

(3) That on the same date Cole said in the presence of Mrs. Wells and Ponder, the county attorney, that:

"We cannot have that kind of man representing Burlington (referring to this plaintiff)."

A. Defendant's defense to the slander suit of "qualified privilege" raised upon appeal must fail for several reasons. It is a well established rule in this circuit that defenses not raised or litigated in the trial court cannot be urged for the first time on appeal. Sisco v. McNutt, 209 F.2d 550 (8 Cir. 1954); National Compressor Corp. v. Carrow, 417 F.2d 97 (8 Cir. 1969). The defense of qualified privilege constitutes an avoidance of the claim and as such is required to be pleaded as an affirmative defense under Rule 8(c), Federal Rules of Civil Procedure. Here, the matter was not pleaded nor was the case tried on the theory of "qualified privilege." The trial court did not instruct upon the issue nor did the defendant request such instruction. There was no exception made to the instructions on this ground nor did the defendant raise the question of "qualified privilege" on its motions for judgment n. o. v. or new trial. Here the defendant denied making the statements rather than seek immunity from the privilege itself. Furthermore, the privilege is not absolute and when the defense is pleaded the question of malice is still one of fact for the jury. See Restatement of Torts § 594, comment a.

B. Defendant's next contention is that the court erred under Nebraska law in submitting the charge of slander per se to the jury. It urges that by reason of a statutory amendment to the Nebraska law in 1957 slander per se has been abolished and that the burden of proof as to malice has now been shifted to the plaintiff in all actions for defamation. This section as amended now reads:

"25-840. Libel or slander; truth as defense; effect of actual malice. In the actions mentioned in section 25-839 [both libel and slander], the defendant may allege the truth of the matter charged as defamatory, prove the same and any mitigating circumstances to reduce the amount of damages, or prove either. The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication." Neb.Rev.Stat. § 25–840 (Reissue 1964).

Defendant relies upon Whitcomb v. Nebraska State Educ. Ass'n, 184 Neb. 31, 165 N.W.2d 99 (1969), as further sup-

port for its position. · The *Whitcomb* case, however, can be distinguished in that it deals with the law of libel rather than slander. It is true, however, that the *Whitcomb* case refers to Section 25–840, which mentions in its title both slander and libel actions.

The fundamental issue is whether Section 25–840 abolishes slander per se in Nebraska. The history of this amended statute makes the answer somewhat confusing. The early forerunner of 25–840 was Sec. 132 of the Nebraska Code of Civil Procedure, which read:

"6703 SEC. 132. [Same—Defense —Truth.] In the actions mentioned in the last section, the defendant may allege the truth of the matter charged as defamatory, and may prove the same, and any mitigating circumstances to reduce the amount of damages, or he may prove either."

The early statute (Sec. 132) was interpreted in the case of Larson v. Cox, 68 Neb. 44, 93 N.W. 1011 (1903). There the Nebraska Supreme Court said that by reason of Section 132 truth would be a complete defense in slander cases. However, when this contention was made as to libel, the same court in Wertz v. Sprecher, 82 Neb. 834, 118 N.W. 1071 (1908) distinguished the *Larson* case and held that an action for libel was controlled by the Nebraska Constitution,[2] and good motives must also be shown by the defendant in addition to the defense of truth. Thus, the absence of malice in Nebraska was required to be shown whenever the defense of truth was raised in a libel action, whereas under the *Larson* case, truth remained a complete defense in a slander action.

This appears to be the status of the Nebraska law until the amendment of the statute in 1957. In 1957, the Nebraska

legislature amended the statute by LB 318, retaining the first sentence of the old Section 132 and adding the language relating to the burden of proof. The legislative files show that at the time the bill was advanced to the floor of the Nebraska Unicameral, Senator McGinley, Chairman of the Judiciary Committee of the Nebraska Legislature, wrote the following report:

"LB 318 provides for some changes in our libel law affecting newspapers to conform to similar legislation passed in 1949 in favor of radio and TV stations.

*"Presently, the truth of a statement is a complete defense against slander, but not against libel. The bill provides that in the absence of malice, truth of published material may be a defense.*

*"Presently, the plaintiff may charge libel and it is the burden of the defendant newspaper to prove that the statement was made without malice. Section 1 requires that the plaintiff must prove the malice in the publication.*

"Section 2 allows the newspaper to publish a correction or retraction, which correction can be introduced as evidence to mitigate damages. A plaintiff will be limited to actual damages if the libellous statement was an honest mistake and a correction is promptly published.[3]

"Section 3 specifies that the libel suit must be brought where the libel was first published. Now the action may be brought in any county where the statement was published or circulated.[4]

"It was shown that the newspaper libel laws have not been substantially revised since 1873.

---

2. Article 1, Section 5 of the Constitution of the State of Nebraska:
 "*Sec. 5. Freedom of speech and press.* Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty; and in all trials for libel, both civil and criminal,

the truth when published with good motives, and for justifiable ends, shall be a sufficient defense." (Emphasis ours).

3. This provision is now found in Section 25–840.01.

4. This provision was later deleted.

"There was no opposition at the public hearing. The bill was advanced to general file by a vote of 5 ayes to 2 nays.

"April 29, 1957." (Emphasis ours.)

It would appear from Senator McGinley's statement that the intent of the overall amendment was to effect solely a change *in the libel laws* of Nebraska. Senator McGinley observed that truth has always been a complete defense in a slander case in Nebraska. By his statement, the obvious purpose of the amendment to Section 1 was simply to transfer the burden of proof as to malice in libel cases when truth was raised as a defense. This legislative history makes clear that it was not contemplated at that time to simultaneously broaden the slander laws by changing the law of Larson v. Cox, supra, and allow a plaintiff to recover for slander notwithstanding its truth, if he could also prove malice.

■ The difficulty here, however, is that Section 1 of 25–840 appears to be somewhat broader when construed as a whole. The retained first sentence still specifically relates to both slander and libel actions. Furthermore, it is a basic rule of construction that the title of an act is to be considered in construing it, particularly if there is an ambiguity. 82 C.J.S. Statutes § 350. Nevertheless, it seems both logical and compelling, from the legislative history, that only the first sentence of Section 25–840, retained under the old act, is intended to affect both libel and slander actions. However, it is not necessary to resolve the word puzzle in the instant case.

Assuming arguendo that the amendment to Section 1 was intended to change the Nebraska common law of slander and place the burden of proving malice on the plaintiff, thereby eliminating truth as a complete defense, such construction cannot avail defendant here. The *Whitcomb* case continually refers to the transfer of the burden of proof of malice under Section 25–840 *when* truth is pleaded as a defense. Justice McCown in his dissent makes this clear when he says, "Section 25–840, R.R.S.1943, applies only to a libel in which the truth of the matter published is asserted and established." 165 N.W.2d at 103. Thus, assuming the 1957 amendment is intended to change the slander law, the burden to prove malice is transferred to the plaintiff only when truth of the defamatory matter is asserted and established. Further study of the legislative file makes this clear. When LB 318 was first introduced in the Nebraska Unicameral on January 23, 1957, the last two sentences of Section 1 of the bill came out of the Judiciary Committee as follows:

"The truth, itself and alone, shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice, and actual malice shall not be inferred or presumed from publication."

On June 11, 1957, the bill was sent to the Committee on Enrollment and Review,[5] and it recommended inter alia, that the comma after "malice" in the fourth line of the above amendment be stricken and a period substituted. The following word "and" was to be dropped and the word "actual" was capitalized to start a new sentence.

5. Rule 5 of the 1957 Legislature reads in part as follows:
"Sec. 6. Enrollment and Review, Authority to Make Corrections. The Chairman of Enrollment and Review shall have authority, without being required to include the same specifically in his reports and recommendations to the Legislature, in accord with accepted usage:

"a. To correct the spelling of words, to correct erroneous division and hyphenation of words, to capitalize or decapitalize words, and to change numbers from words to figures or from figures to words, in new and independent acts, in the new matter of amendatory acts, in standing committee reports, and in general file, select file and specific amendments."

The final form of the bill as passed, was sent to the printer on June 12, 1957, and included the changes made by the Committee. The printer's copy of Section 1 appeared as follows:

"25–840. In the actions mentioned in section 25–839, the defendant may allege the truth of the matter charged as defamatory ~~and may~~ prove the same and any mitigating circumstances to reduce the amount of damages, or ~~he~~ ~~may~~ prove either. The truth, itself and alone, shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice, ~~and actual~~ malice shall not be inferred or presumed from publication."

♦

Thus, it becomes manifest that the last two sentences of Section 1 were originally drafted as one and altered by the Committee on Enrollment and Review only for grammatical purposes. It is obvious that the two sentences were intended to be construed as interrelated and to be read together.

The above is a very technical, but significant factor in finding that the amendment transferred the burden of proving malice only when truth was asserted as a defense. Under these circumstances we prefer to leave it to the Nebraska courts to say whether the 1957 amendment to Section 25–840 was intended to change the Nebraska law of slander and eliminate the truth as a complete defense. It is unnecessary to decide this since if the statute is to be so construed it is clear that the burden of proof as to malice is shifted only when truth is pleaded as a defense.[6] In the instant case truth was not pleaded as a defense and the statutory amendment becomes irrelevant. Under these circumstances we find that Nebraska law still recognizes a claim for slander per se.

IV. As a final contention, the defendant asserts the jury verdict on the slander count to be excessive because of the absence of any evidence of injury. This overlooks the general rule, well established in Nebraska, that in an action for slander per se the plaintiff need not prove any specific harm to reputation or any other loss caused thereby. The jury may infer from the slanderous statements and surrounding circumstances that there was some general impairment of reputation. See 3 Restatement of Torts § 621; Boldt v. Budwig, 19 Neb. 739, 744, 28 N.W. 280, 283 (1886); Kurpgeweit v. Kirby, 88 Neb. 72, 76, 129 N.W. 177, 179, 33 L.R.A.,N.S., 98 (1910); Fitzgerald v. Young, 89 Neb. 693, 694, 132 N.W. 127, 129 (1911); cf. Sias v. General Motors Corp., 372 Mich. 542, 127 N.W.2d 357 (1964). Furthermore, this court has often stated that "the excessiveness of a verdict is a matter primarily directed to the judgment

---

6. The Restatement of Torts also supports this conclusion. See more particularly the special comment following § 582. To extend the burden of proving malice to the plaintiff in all defamation actions would be to re-envoke a concept which has been absent in the common law at least since 1825 in actions involving defamation. See Prosser, Law of Torts, supra at § 108. It would move the Nebraska definition of libel and slander completely outside all accepted definitions.

and the conscience of the trial judge on motion for a new trial." Century "21" Shows v. Owens, 400 F.2d 603, 611 (8 Cir. 1968). Cf. Grunenthal v. Long Island Railroad Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); Burger Chef Systems, Inc. v. Govro, 407 F.2d 921 (8 Cir. 1969). After carefully reviewing the circumstances of this case, we must conclude that the trial court did not abuse its discretion. The verdict is not so excessive as to create a "plain injustice."

Judgment affirmed.

VAN OOSTERHOUT, Chief Judge (dissenting).

I respectfully dissent. I am firmly of the view that the trial court erred in denying defendant's timely motion for a directed verdict both on the malicious prosecution count and the slander count and that the judgment should be reversed and remanded to the district court with direction to enter judgment for the defendant. This is a diversity case in which Nebraska law controls and hence little purpose would be served by setting out in full the many reasons why a reversal is required.

The authorities cited by the majority which hold that a person who has supplied information to the prosecuting authorities is not liable as an instigator, particularly where the decision of whether to prosecute is left to the prosecuting authorities" discretion, standing alone require a reversal of the malicious prosecution count.

Mrs. Wells' complaint to the local police that plaintiff while operating defendant's truck got out of the truck with his pants open and partly down was reported to the defendant by the police. Mrs. Wells' statement of the incident was taken at the sheriff's office in the presence of a deputy sheriff and Mr. Cole, the defendant's representative. The statement was signed by Mrs. Wells, a reputable person. The truth of the written statement is not disputed. Immediately after the statement was taken, Mr.

Cole, Mrs. Wells and the deputy sheriff went to the office of Mr. Ponder, the prosecuting attorney, and delivered the statement to him. In delivering the statement, Mr. Cole said, "Here it is. You can do with it what you want." Mr. Ponder testified that neither Mr. Cole nor anyone else asked him to file a criminal complaint. There is no substantial evidence to the contrary.

The criminal complaint was signed and filed by Mr. Ponder as prosecuting attorney. It charged plaintiff with violation of § 28–920.01, R.R.S.Neb., which proscribes exposure of the person to public view in a manner adapted to excite to vicious or lewd thoughts or acts and carries a penalty of a fine of $500 or up to six months in jail. Section 28–920 proscribes indecent exposure of the person or the use of obscene language and carries a penalty of up to $100 or not over ninety days in jail.

It fairly appears that the question of whether to prosecute and if so the section of the statute under which the charge was to be made rested exclusively with the prosecutor. Nothing appears in the statement of evidence that the exposure was adapted to excite vicious or lewd thoughts or acts. While it would appear that the prosecution was unfortunate, no evidentiary basis exists for charging defendant with instigating the prosecution. The responsibility for any investigation reasonably required before launching the prosecution rested upon the law enforcement officers under the facts of this case.

With respect to the slander count, the alleged slanderous utterances are set out in the majority opinion. The evidence that the statements were made in the form stated is weak when weighed against the evidence in opposition thereto but the evidence would appear to be sufficient to raise a jury issue on the making of the alleged statements. A serious doubt exists on whether they charge a crime.

Plaintiff pleaded the statements were false and malicious. Defendant denied

such allegations. The publication of the allegations was in connection with reports to the law enforcement officials. Such statements would appear to be at least qualifiedly privileged. Defendant in its motion raised the point that malice was not proven.

Section 25–840, R.R.S.Neb., set out in full in the majority opinion, is clear and unambiguous. By its terms it expressly applies to libel and slander actions. The last sentence clearly states, "Actual malice shall not be inferred or presumed from publication."

In Whitcomb v. Nebraska State Education Ass'n, 165 N.W.2d 90, 101, the court majority authoritatively interprets the statute as follows:

"Previous to the amendment in 1957 of section 25–840, R.R.S.1943, when a publication was libelous per se, malice was presumed. The presumption made a prima facie case on malice so that the burden of rebutting the presumption was on the defendant. See Hall v. Rice, 117 Neb. 813, 223 N.W. 4, 78 A.L.R. 1521. In 1957, the following was added to the statute: 'The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication.' This changed the law by eliminating any presumption of malice and transferring the burden to the plaintiff on that issue."

The last sentence of the quotation clearly indicates that the court considered that the statute places the burden of proof on the plaintiff on the malice issue.

Resort to legislative history as an aid in interpreting statutes is generally appropriate only when a statute is ambiguous. An unambiguous statute should be interpreted as written. Hanover Bank v. Commissioner of Internal Revenue, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187; United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.

2d 575; United States v. Martin, 8 Cir., 337 F.2d 171, 174.

There is no support in the record for a finding of actual malice. Defendant's investigator Cole had no previous acquaintance with the plaintiff. The plaintiff was not discharged by the defendant. The motion for a directed verdict on the slander count should be sustained on the asserted ground that there is no substantial evidence to support a finding of malice.

Since what has heretofore been said is dispositive of this appeal, I do not reach or express a view on the troublesome issues of prejudicial remarks by the trial court and excessive damages induced by passion and prejudice, and the overlapping of damages on the two counts.