JOHN R. YOUNG, JR., APPELLANT, V. FIRST UNITED BANK OF
BELLEVUE, A NEBRASKA BANKING CORPORATION, ET AL.,
APPELLEES.
516 N.W.2d 256

Filed May 27, 1994.    No. S-92-1001.

Jeffrey A. Silver for appellant.

Thomas J. Walsh and Larry A. Jobeun, of Walsh, Fullenkamp & Doyle, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

BOSLAUGH, J.

The plaintiff, John R. Young, Jr., appeals from the judgment of the district court for Douglas County, which granted the defendants' motion for summary judgment. Young had sought damages for alleged libel, but the trial court found that the communication in issue was true, qualifiedly privileged, and made without malice. Young assigns as error the granting of the motion, claiming that the issues of qualified privilege, malice, and the truth of the statements in the letter are questions of fact for the jury.

The defendants in this action are Crown Bancshares, Inc. (Crown), First United Bank of Bellevue (FUB), and Charles R. Clatterbuck. Crown is a holding company for FUB. Both Crown and FUB are Nebraska corporations. Clatterbuck is FUB's current chairman of the board and is Crown's acting chairman of the board.

Young was employed as the president and chief executive officer of FUB from its inception in December 1985 until his resignation in March 1988. During the term of his employment, Young had the authority to make loans of up to $200,000. The board of directors of FUB had the right to approve or disapprove the loans that Young made. FUB made a significant number of bad loans between its inception and the time of Young's resignation. The parties dispute the actual amount of control exercised by each other over the loans that FUB made. A resolution of this dispute is not necessary to the analysis of this case.

Clatterbuck and Robert Doyle, an FUB board member, asked Young to resign in March 1988. He resigned, accepting an offer to act as a consultant to FUB for $3,000 per month over the next 6 months. The board of FUB made three payments and discontinued the payments, alleging that Young had misled the board in his operation of FUB. Young successfully sued FUB for nonpayment. Clatterbuck stated during a deposition taken for the trial that he questioned Young's integrity. Following the lawsuit, Doyle was quoted in The Bellevue Leader newspaper as

saying that the ruling of the trial court did not clear Young of any wrongdoing because "Young did not take the stand to rebut anything."

On June 29, 1990, Clatterbuck, as the chairman of Crown, sent the letter which is the subject of this suit to Crown's shareholders. In pertinent part, the letter stated:

Most of you are aware that First United Bank has been plagued with severe problems stemming from decisions made while the bank was being managed by Mr. John Young and Tom Edwards [vice-president of FUB during Young's tenure]. As a result, your company lost over $1.1 million dollars, mostly attributed to poor loan decisions and excessive overhead expense.

Young filed this action in the district court for Douglas County. He sought special and general damages for libel, alleging that the June 29 letter was defamatory and made with malice. He further alleged that within 20 days, he had sent a demand for correction pursuant to Neb. Rev. Stat. § 25-840.01 (Reissue 1989). In answer, the defendants alleged that the statements in the letter were true, qualifiedly privileged, and made without malice.

The defendants moved for summary judgment. The district court found that the statements were true and qualifiedly privileged, but stated that the truth of the statements and the qualified privilege of the communication did not dispose of the case. The district court found that damages would be available regardless of truth or privilege if the communication had been made with actual malice. The court reviewed the allegations made by Young and held that the actions of the defendants did not constitute actual malice. Accordingly, the district court granted summary judgment for the defendants. Young appealed.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence

showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Id*. In reviewing an order sustaining a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences that may be deduced from the evidence. *Id*.

Young claims that three issues of material fact exist that preclude summary judgment: (1) whether the statements in the June 29 letter were true, (2) whether the letter is qualifiedly privileged, and (3) whether the statements were made with malice. We will address each of these matters separately.

The district court found that the statements about Young's decisions were true. Young claims that the statements were false because the board, not Young, managed FUB and approved each loan. Young claims that the board made all the major decisions and that he was not responsible for the condition of FUB. The record shows that the board appointed a "loan committee" to review loans made by Young and Edwards after most of the bad loans were made. The vast majority of the bad loans which resulted in the losses to FUB were made when Young was the president of FUB and before the loan committee came into existence. Young admits that he had authority to make loans on behalf of FUB. No evidence was presented that showed that his authority was hindered before the formation of the loan committee. He admits that he alone was in charge of the day-to-day operations of FUB. The trial court correctly found that the truth of the statements was not in issue; FUB's losses were attributable to the decisions that were made while Young was its manager.

The district court also found that the letter was a qualifiedly privileged communication. Whether a qualified privilege exists is a matter of law. *Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976). The trial court quoted *Turner v. Welliver*, 226 Neb. 275, 287, 411 N.W.2d 298, 307 (1987), for the following proposition of law:

> A communication is privileged if made bona fide by one who has an interest in the subject matter to one who also has an interest in it or stands in such relation that it is a

reasonable duty, or is proper, for the writer to give the information.

A remarkably similar situation was addressed by the U.S. Court of Appeals for the Fourth Circuit in *Molever v. Levenson, supra*. In *Molever*, a former bank president filed actions for libel and slander against several of the bank's board members who had been critical of his performance during a board meeting. The board members allegedly made statements that the former president had been " 'grossly incompetent in his position as president of the Bank' " and that the former president had " 'wrecked this bank and is responsible for its present financial crisis.' " 539 F.2d at 1004. The jury returned a verdict for the former president, and the trial court entered a judgment notwithstanding the verdict for the board members, which was upheld by the circuit court.

In this case, the trial court noted that no evidence was presented which showed that the June 29 letter was sent to anyone other than the shareholders. The June 29 letter was a communication between the chairman of a corporation and the shareholders of the corporation. Other courts have held that communications between a director of a corporation and the shareholders of the corporation are qualifiedly privileged. See, e.g., *Kainz v. Lussier*, 4 Haw. App. 400, 667 P.2d 797 (1983); *World Oil Co. v. Hicks*, 46 S.W.2d 394 (Tex. Civ. App. 1932); *Lind v. Lynch*, 665 P.2d 1276 (Utah 1983).

In *Turner v. Welliver, supra*, this court held that a qualified privilege existed between an insurer and an insured because the parties share a common interest. The director of a corporation and the shareholders of the corporation share an interest that is at least as compelling as that shared by parties to an insurance contract. This court agrees with the finding of the trial court that the June 29 letter enjoyed a qualified privilege as a matter of law and that no issue of material fact existed which precluded summary judgment.

Since this court has resolved the questions regarding truth and qualified privilege, the only assigned error yet unresolved concerns the trial court's finding that insufficient evidence of malice existed for the case to go forward. Young must prove actual malice to prevail at trial. See *Whitcomb v. Nebraska*

*State Education Assn.*, 184 Neb. 31, 165 N.W.2d 99 (1969). "Where a qualified privilege exists, there can be no recovery without proof of malice." *Turner v. Welliver*, 226 Neb. at 287, 411 N.W.2d at 307. "The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication." Neb. Rev. Stat. § 25-840 (Reissue 1989).

Malice has been defined as hate, spite, or ill will. *Turner v. Welliver, supra.* Young cites as proof of malice the statement of Doyle to The Bellevue Leader that the ruling in favor of Young in the contract case did not clear Young of any wrongdoing. Young also cites as proof of malice the statement by Clatterbuck in his deposition that Clatterbuck questioned Young's integrity. Young cites *Fitzgerald v. Young*, 89 Neb. 693, 132 N.W. 127 (1911), for the proposition that defamation that is not pled may be introduced to prove malice, but not damages, when malice is in fact an issue. However, neither of these statements is defamatory. Defamation is language the nature and obvious meaning of which is to impute to a person the commission of a crime or to subject him to public ridicule, ignominy, or disgrace. *Treutler v. Meredith Corporation*, 455 F.2d 255 (8th Cir. 1972). Young offers no proof that the statements made by the defendant are defamatory, and the trial court was correct in finding that the statements were not evidence of actual malice.

Young claims that the timing of the letter is further proof of malice; the letter was sent more than 2 years after Young had left FUB. The defendants contend that the letter was sent to Crown's shareholders in 1990 only after Crown was aware of its financial status and was directed to inform its shareholders by the FDIC. Young offered neither proof that the alleged delay was malicious nor reasons why a jury might find the delay malicious. The trial court properly ruled that the alleged delay in the dissemination of the letter was not evidence of malice.

Finally, Young claims that paragraph 17 of his affidavit is sufficient to deny summary judgment. That paragraph states: "In Affiant's opinion, the letter which is the subject of this litigation was not made in good faith, was done with malice,

and with no reasonable or probable grounds for the allegations contained therein to be true." The trial court found that the affidavit was not sufficient to resist a motion for summary judgment. We agree. "The rule in Nebraska regarding . . . affidavits requires that '[s]upporting and opposing affidavits [1] shall be made on personal knowledge, [2] shall set forth such facts as would be admissible in evidence, and [3] shall show affirmatively that the affiant is competent to testify to the matters stated therein.' " *White v. Ardan, Inc.*, 230 Neb. 11, 21, 430 N.W.2d 27, 33 (1988) (quoting Neb. Rev. Stat. § 25-1334 (Reissue 1989)). " '[S]tatements in affidavits as to opinion, belief, or conclusions of law are of no effect. . . .' " *Eden v. Klaas*, 165 Neb. 323, 328, 85 N.W.2d 643, 646 (1957). The statements made in paragraph 17 of Young's affidavit are conclusory and, therefore, of no effect.

Because we find that the trial court correctly determined that the statements in the June 29 letter were true, qualifiedly privileged, and made without actual malice, we hold that the granting of the defendants' motion for summary judgment was proper. The trial court's judgment is affirmed.

AFFIRMED.

WHITE, J., dissenting.

I agree with majority that Clatterbuck's letter was qualifiedly privileged. However, I would find that Young has at least raised an issue of fact as to whether Clatterbuck acted with malice. I would therefore hold that summary judgment is inappropriate. Accordingly, I respectfully dissent.

A defendant to a libel action may establish that the allegedly libelous communication was qualifiedly privileged. The plaintiff can overcome this privilege by establishing that the communication was made with actual malice. *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987). In the context of a qualified privilege, actual malice means hate, spite, or ill will. *Id.*

The majority states that defamatory statements which have not been pled may be introduced as evidence of malice. True enough. But a statement need not be defamatory to be evidence of malice. "I wrote that letter with hate, spite, and ill will" is not a defamatory statement, but is clearly evidence of malice.

Virtually any admissible statement may be introduced as evidence of malice. The real question, on a motion for summary judgment, is whether the statement which has been introduced raises an issue of fact as to malice.

In deposition, Clatterbuck testified that he questioned Young's integrity. The testimony raises the possibility that Clatterbuck bore Young ill will, which in turn raises the possibility that Clatterbuck's letter was written with actual malice. Young has presented a genuine issue of material fact as to malice, and he should be able to try this issue to a jury.